## S16A1106. NEMCHIK et al. v. RIGGS.
(792 SE2d 347)

NAHMIAS, Justice.

Appellants George and Tennie Nemchik and appellee Tony Michael Riggs own adjoining property in Cobb County. The Nemchiks claim an easement across a heavily wooded portion of Riggs's property that the parties refer to as "Lot 9," while Riggs, who has plans to develop Lot 9, denies the existence of an easement. When the Nemchiks started cutting down trees on Lot 9 and posted notices on the property, Riggs filed a lawsuit to settle the dispute, and the trial court eventually entered an interlocutory injunction barring both parties from going on Lot 9 for any purpose during the pendency of the case. The Nemchiks appeal, claiming that Riggs failed to show a substantial likelihood

---

that he would prevail on his claims at trial and that the threatened harm to Riggs did not outweigh the harm that the injunction would do to them. We see no abuse of discretion in the trial court's order, and we therefore affirm it.

1. The Nemchiks own McGuire Properties, Inc. ("MPI") and McGuire Construction Company, LLC ("MCC"). On August 9, 2004, the Nemchiks deeded part of a large tract of land in Cobb County to MPI for the development of a small subdivision centered on a single cul-de-sac that was ultimately named "The Lanesborough." On May 9, 2005, three deeds were executed: MPI deeded the subdivision land to George Nemchik; George Nemchik deeded the land to MCC; and MCC executed a deed to secure debt ("Security Deed") in favor of Citizens & Merchants State Bank, which was later taken over by the Bank of North Georgia ("lender"). All three deeds referenced an unrecorded subdivision plat for Lanesborough that included Lot 9, with the date April 25, 2005 in the title block and May 2, 2005 as the date of the surveyor's acknowledgment. We will call this the "unrecorded plat." This plat did not show an easement across Lot 9, and the Security Deed included language that prohibited MCC from granting any easements without the lender's prior written consent.

On June 6, 2005, a subdivision plat for Lanesborough with the date April 25, 2005 in the title block and May 25, 2005 as the date of the surveyor's acknowledgment was recorded by MPI, even though MPI had transferred its interest in the land on May 9. We will call this the "recorded plat." The recorded plat showed an ingress-egress easement along the northern edge of Lot 9, the effect of which would be to connect the cul-de-sac, and thus the subdivision, to property that the Nemchiks retained west of the subdivision that is bounded on the north and south sides by existing roads. On August 10 and August 16, 2005, MCC executed easement deeds to MPI that referenced the recorded plat, but MCC did not obtain the lender's prior written consent to the easement as required by the Security Deed.

On June 2, 2009, the lender foreclosed on MCC's Security Deed and executed a deed under power of sale to itself ("Foreclosure Deed"). The Foreclosure Deed referenced a plat dated "4/25/05" but said that the plat was recorded on the page where the plat recorded by MPI is found. The Foreclosure Deed, which recited that its purpose and intent was to convey "all of the right, title, equity and interest" that MCC had in the property, said that the lender took Lots 3-12 "subject to all . . . easements . . . affecting the Premises prior to the Security Deed and to which the Security Deed is subject." The lender later deeded the remaining undeveloped lots, which included Lot 9, to CLC Ventures, LLC, which deeded the lots to Riggs on July 10, 2014. These two deeds also referenced the recorded plat, but each deed explicitly stated that

it was "not subject to any matters of public record which were extinguished by operation of law by virtue of" the Foreclosure Deed.

On October 16, 2015, Riggs filed a complaint for declaratory judgment, seeking damages and injunctive relief in addition to declaratory relief, and an emergency motion for a temporary restraining order. He alleged that the Nemchiks and a man who was later dismissed from the lawsuit had begun clearing the claimed easement across the heavily wooded Lot 9 and had posted notices of the claimed easement on the property. The trial court entered a temporary restraining order the same day, which was later extended to November 17.

On November 18, 2015, the trial court held an evidentiary hearing, at which numerous documents were admitted into evidence and George Nemchik, Riggs, and a man who does work for Riggs testified. On November 19, the court entered an interlocutory injunction prohibiting the Nemchiks, Riggs, and all persons acting in concert with or on behalf of them from going on Lot 9 for any purpose. Also on November 19, the Nemchiks filed their answer and counterclaims against Riggs for trespass and for slander and libel of title, seeking a declaratory judgment in their favor on the existence of an easement across Lot 9, injunctive relief, and damages. The Nemchiks filed a timely notice of appeal challenging the interlocutory injunction, and the case was orally argued on July 12, 2016.[1]

2. In deciding whether to issue an interlocutory injunction, a trial court should consider whether:

> (1) there is a substantial threat that the moving party will suffer irreparable injury if the injunction is not granted; (2) the threatened injury to the moving party outweighs the threatened harm that the injunction may do to the party being enjoined; (3) there is a substantial likelihood that the moving party will prevail on the merits of her claims at trial; and (4) granting the interlocutory injunction will not disserve the public interest.

*SRB Investment Svcs. v. Branch Banking and Trust Co.*, 289 Ga. 1, 5

---

[1] On January 15, 2016, the trial court entered an order declaring that the Nemchiks do not have an easement across Lot 9, along with a certificate of immediate review. On January 25, the Nemchiks filed an application for interlocutory appeal in this Court, which we transferred to the Court of Appeals on February 4 because easement disputes are not within this Court's title-to-land jurisdiction. See Case No. S16I0769. On March 28, the Court of Appeals granted the application, and the Nemchiks then filed a notice of appeal. See Case No. A16A1731. The Court of Appeals has not yet issued a decision in that case.

(709 SE2d 267) (2011) (citation omitted).

> Although an interlocutory injunction is an extraordinary remedy and the power to grant it must be prudently and cautiously exercised, the trial court is vested with broad discretion in making that decision. We will not reverse the trial court's decision to grant or deny an interlocutory injunction unless the trial court made an error of law that contributed to the decision, there was no evidence on an element essential to relief, or the court manifestly abused its discretion.

Id. (citations and punctuation omitted).

The Nemchiks argue first that Riggs failed to show a substantial likelihood of success on the merits. We disagree. The Nemchiks presented no evidence at the interlocutory injunction hearing showing that they have a lawful easement across Lot 9. The May 9, 2005 Security Deed from MCC to the lender referenced the unrecorded plat the surveyor signed on May 2, which did not show the claimed easement; there is no evidence that the lender had any other actual or constructive notice of the claimed easement at that time; and the Security Deed prohibited MCC from thereafter granting easements without the lender's prior written consent. MCC did not obtain prior written consent from the lender as required by the Security Deed's express terms, so the August 2005 easement deeds from MCC to MPI do not bind the lender and its successors. See *Allgood Farm v. Johnson*, 275 Ga. 297, 300 (565 SE2d 471) (2002).

Moreover, four years after MCC executed the easement deeds to MPI, the lender foreclosed on the Security Deed and executed the Foreclosure Deed, taking Lot 9 subject to all easements affecting the premises *prior to* the Security Deed. However, the Nemchiks rely on a plat that was signed by the surveyor and recorded *after* MCC executed the Security Deed to the lender. It follows that the Foreclosure Deed extinguished any easement held by MCC by operation of law. See *Rhodes v. Anchor Rode Condo. Homeowner's Assn.*, 270 Ga. 139, 140 (508 SE2d 648) (1998) ("A valid foreclosure of a security deed not only vests legal title in the purchaser, it also divests all of the grantor's rights in the property as well as the rights of those claiming through the grantor that are subject to the security deed."). Thus, the trial court did not err in concluding that there was a substantial likelihood that Riggs would prevail on the merits of his claims at trial.

The Nemchiks also argue that the trial court erred in finding that the threatened harm to Riggs outweighed the harm that entry of the interlocutory injunction would cause them. The court found in its

injunction order that Riggs had already "suffered damage" from the destruction of trees on the claimed easement and would "suffer irreparable damage if the [Nemchiks were] not restrained from changing the existing condition of Lot 9" as they had threatened to do. By contrast, at the hearing the Nemchiks failed to show any harm to them from being restrained from entering Lot 9 until this case is resolved. Moreover, the trial court enjoined both the Nemchiks and Riggs from entering Lot 9, thereby preserving the status quo of non-use of Lot 9. See, e.g., *Gray Lumber Co. v. Lockridge*, 135 Ga. 230, 230 (69 SE 170) (1910) ("Under the pleadings and evidence the judge did not abuse his discretion in granting an order on the interlocutory hearing of the application for injunction, which, in effect, temporarily enjoined both parties from cutting or removing the timber from the land in dispute."). See also *Johnson v. Hall*, 83 Ga. 281, 282 (9 SE 783) (1889) (affirming interlocutory injunction barring both parties from entering the disputed property "to preserve the land *in statu quo* until the title is settled by the proper proceedings"). The trial court identified a necessity for the injunction and fairly balanced the equities.

For these reasons, we conclude that the trial court did not abuse its discretion in entering the interlocutory injunction.

*Judgment affirmed. Thompson, C. J., Benham, Hunstein, Melton and Blackwell, JJ., and Judge J. P. Boulee concur. Hines, P. J., not participating.*

DECIDED OCTOBER 17, 2016 —
RECONSIDERATION DENIED DECEMBER 8, 2016.

*McLaughlin & Loring, Matthew G. McLaughin*, for appellants. *James D. Humphries IV, Jordan T. Stringer*, for appellee.