300 Ga. 835
FINAL COPY

S16A1895. TMX FINANCE HOLDINGS, INC. et al. v. DRUMMOND
FINANCIAL SERVICES, LLC et al.

BLACKWELL, Justice.

Drummond Financial Services, LLC and TMX Finance Holdings, Inc. are competing automobile title loan companies based in Georgia, with TMX doing business as "TitleMax." In 2014, Drummond and several of its affiliated companies filed a lawsuit against TitleMax and several of its affiliated companies, alleging that TitleMax was "engaged in a nationwide campaign to systematically and illegally steal [Drummond's] customers." More specifically, Drummond alleged that TitleMax was compensating Drummond employees to refer customers to TitleMax, trespassing on Drummond property to gather information about Drummond customers, and using motor vehicle records to identify and solicit those customers in violation of the Driver's Privacy Protection Act of 1984.[1] Based on these allegations, Drummond asserted claims

---

[1] See 18 USC § 2721 et seq.

against TitleMax under the laws of Georgia and various other states for trespass, misappropriation of trade secrets, tortious interference with contracts, and unfair competition.

A few months later, Drummond filed a motion for a nationwide interlocutory injunction to prevent TitleMax from continuing to engage in practices that Drummond alleged were tortious and illegal. Following a hearing, the trial court granted a nationwide interlocutory injunction that prohibits TitleMax from "[e]ntering any of [Drummond's] [s]tores or the parking lots [or certain portions of the parking lots] of [Drummond's] [s]tores" to solicit Drummond customers or to record their license plate numbers or vehicle identification numbers (other than for purposes permitted by the Driver's Privacy Protection Act).[2] In addition, the injunction prohibits TitleMax from offering compensation to Drummond employees to refer Drummond customers to TitleMax. TitleMax appeals,[3] and for the reasons that follow, we affirm in

[2] The injunction also prohibits TitleMax from otherwise conducting searches of motor vehicle databases to obtain information about Drummond customers except where such searches are expressly allowed by the Driver's Privacy Protection Act and from using such information to solicit Drummond customers.

[3] TitleMax originally appealed to the Court of Appeals, which transferred the case to this Court in 2016. Because TitleMax complains about the propriety of the equitable relief awarded by the trial court and because it filed a notice of appeal before January 1, 2017, this

part and vacate in part, and we remand this case for further proceedings consistent with this opinion.

Whether an interlocutory injunction is warranted is a matter committed to the discretion of the trial court. See Holton v. Physician Oncology Svcs., 292 Ga. 864, 866 (2) (742 SE2d 702) (2013). In exercising this discretion, a trial court generally must consider:

> (1) whether there exists a substantial threat that a moving party will suffer irreparable injury if the injunction is not granted; (2) whether the threatened injury to the moving party outweighs the threat and harm that the injunction may do to the party being enjoined; (3) whether there is a substantial likelihood that the moving party will prevail on the merits at trial; and (4) whether granting the interlocutory injunction will not disserve the public interest.

Davis v. VCP South, 297 Ga. 616, 621-622 (774 SE2d 606) (2015) (citation omitted). And "[a]lthough one seeking interlocutory injunctive relief need not always prove all four of these factors, a trial court must keep in mind that an

_____

case falls within the appellate jurisdiction of this Court and not the Court of Appeals. See Danforth v. Apple Inc., 294 Ga. 890, 892, n. 3 (757 SE2d 96) (2014). We note, however, that in cases in which a notice of appeal (and application to appeal, if applicable) was or is filed on or after January 1, 2017, the Court of Appeals will have jurisdiction of "[a]ll equity cases, except those cases concerning proceedings in which a sentence of death was imposed or could be imposed and those cases concerning the execution of a sentence of death." OCGA § 15-3-3.1 (a) (2). See Williford v. Brown, 299 Ga. 15, 16 (2), n. 1 (785 SE2d 864) (2016) (citing and quoting from Appellate Jurisdiction Reform Act of 2016, Ga. L. 2016, p. 884, § 6-1 (c)).

interlocutory injunction is an extraordinary remedy, and the power to grant it must be prudently and cautiously exercised." Jansen-Nichols v. Colonial Pipeline Co., 295 Ga. 786, 787 (764 SE2d 361) (2014) (citations and punctuation omitted). We will not reverse the decision to grant an interlocutory injunction "unless the trial court made an error of law that contributed to the decision, there was no evidence on an element essential to relief, or the court manifestly abused its discretion." Nemchik v. Riggs, 300 Ga. 363, 366 (2) (792 SE2d 347) (2016) (citation and punctuation omitted).

Here, TitleMax alleges that the trial court erred when it found that there was a substantial likelihood that Drummond would prevail on the merits at trial as to each of its claims and that, in any event, the trial court imposed greater restrictions than were warranted. We agree that Drummond is unlikely to be fully successful on the merits of all of its claims, and we agree as well that the record and findings of the trial court do not sustain the entire breadth of the nationwide injunction that the trial court entered.

1. First, TitleMax claims that Drummond is unlikely to succeed on the merits of its trespass claim, and to the extent that the injunction is based on this claim, the injunction is overly broad. In order to prevail on a trespass claim

4

under Georgia law at trial, Drummond will have to show that it holds a sufficient interest in each of the properties from which it seeks to exclude TitleMax employees and agents. See Rabun County v. Mountain Creek Estates, 280 Ga. 855, 857 (1) (632 SE2d 140) (2006). Even if we may assume that Drummond has a sufficient ownership interest in its stores (by ownership or leasehold),[4] we cannot indulge such an assumption about parking lots. The record is devoid of any evidence about Drummond's property rights in those parking lots, and it appears undisputed that Drummond does *not* have the right to exclude TitleMax from parking lots that Drummond shares with other businesses. Nevertheless, the injunction prohibits TitleMax from soliciting Drummond customers or collecting certain information about Drummond customers in specified portions of "shared" parking lots.[5] To the extent that the

[4] TitleMax also asserts that Drummond is unlikely to succeed on the merits of its trespass claims because, TitleMax says, Drummond's stores do not contain adequate signage that prohibits such activity. But "[a] person commits trespass when he knowingly and without authority enters upon the land of another after having received prior notice that such entry is forbidden." Pope v. Pulte Home Corp., 246 Ga. App. 120 (1) (539 SE2d 842) (2000). And here, it appears undisputed that Drummond notified TitleMax that its agents and employees were not permitted to come inside its stores to solicit its customers or offer incentives to Drummond employees to refer customers to TitleMax. Drummond has shown, we think, a likelihood of success on the merits of its trespass claim as to its stores.

[5] We note that the trial court attempted to limit the scope of the injunction by providing that it "does not prohibit [TitleMax's] use of or access to any areas [TitleMax]

nationwide injunction limits the circumstances in which TitleMax may go upon property from which Drummond has no right to exclude TitleMax agents and employees, the scope of the injunction is not warranted by a claim for trespass.

2. TitleMax also claims that Drummond failed to show a substantial likelihood that it would succeed on the merits of its claim for misappropriation of trade secrets. This claim is based on the allegation that TitleMax used information it gathered from motor vehicle records to identify Drummond's customers. But "only tangible lists of customers . . . warrant protection as trade secrets" in Georgia. DeGiorgio v. Megabyte Intl., 266 Ga. 539, 540 (3) (468 SE2d 367) (1996). Drummond has not claimed that TitleMax has taken a tangible list of Drummond's customers but rather that TitleMax has searched databases of motor vehicles to determine which vehicles have liens held by Drummond. Such actions may be unlawful under the Driver's Privacy Protection Act or otherwise,[6] but they do not constitute a misappropriation of

---

ha[s] a legal right to possess for lawful business purposes." As a result, the injunction apparently permits TitleMax to solicit Drummond customers on property lawfully "possess[ed]" by TitleMax. But Drummond's claim for trespass is only sustainable as to properties in which *Drummond* has a sufficient property interest to exclude TitleMax, not properties for which TitleMax lacks a "legal right to possess for lawful business purposes."

[6] We note that Drummond does not assert any claim under the Driver's Privacy Protection Act and that it would not have standing to do so. See 18 USC § 2724 (a) ("[a]

trade secrets in Georgia. See OCGA § 10-1-761 (4) ("'[t]rade secret' means . . . a list of actual or potential customers . . . which is not . . . available to the public and . . . [d]erives economic value . . . from not being generally known to, and not being readily ascertainable by proper means by, other persons . . .").[7] As a result, to the extent that the nationwide injunction against TitleMax collecting information about Drummond customers in parking lots or using that information to search databases of motor vehicles is based on a finding that the identities of Drummond customers are trade secrets, the injunction cannot be sustained.[8] See BEA Systems v. WebMethods, 265 Ga. App. 503, 510 (595

person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court").

[7] We note that Drummond may have a better chance of success on the merits of its claim of misappropriation of trade secrets under the laws of other states. See Al Minor & Assoc. v. Martin, 881 NE2d 850, 854 (Ohio 2008). But if Drummond has shown only that TitleMax may have misappropriated trade secrets in one or two states by improperly gathering information in those states about customers in those states, we fail to see how that showing would sustain a *nationwide* injunction against TitleMax gathering customer information, including in states in which its practices may not violate the law of trade secrets in any respect (like Georgia).

[8] Similarly, while Drummond presented evidence that it had a substantial likelihood of success in showing that TitleMax was guilty of unfair competition based on the statutes of four other states, Drummond has made no showing that TitleMax's alleged actions could be considered unfair competition in the vast number of states covered by the nationwide injunction.

SE2d 87) (2004) ("injunction was overly broad and an abuse of discretion, because some or all of [the] information [which defendants were enjoined from disclosing] may not have had trade secret protection").

3. Finally, the portion of the injunction that prohibits TitleMax from offering compensation to Drummond employees who refer Drummond customers to TitleMax appears to be based on Drummond's claim for tortious interference with contracts and business relationships. TitleMax has not shown that the trial court abused its discretion when it found that Drummond was likely to succeed on the merits of this claim.[9]

4. To the extent that the nationwide injunction prohibits TitleMax employees and agents from going into Drummond stores for certain purposes, and to the extent that it prohibits TitleMax from offering compensation to

---

[9] We also reject TitleMax's claims that Drummond did not present any evidence that it would suffer "irreparable injury" if the injunction was not granted and that the trial court failed to balance the equities. Drummond presented evidence that TitleMax was actively soliciting Drummond's customers, including through payments to Drummond's employees, and the trial court explicitly balanced the equities when it found that there was "a substantial threat" that Drummond would "suffer irreparable injury in the form of lost customers . . . if an interlocutory injunction is not granted [and that] the threatened injury to [Drummond] far outweighs any harm to [TitleMax]." We cannot say that the trial court abused its discretion when it made these findings, and, therefore, these arguments are without merit. See Poe & Brown of Ga. v. Gill, 268 Ga. 749, 750 (492 SE2d 864) (1997) (equities "strongly weigh in favor" of injunctive relief where plaintiff presented evidence that defendant was unlawfully soliciting its customers).

Drummond employees for customer referrals, the injunction is affirmed. To the extent that the injunction prohibits TitleMax from going upon parking lots near Drummond stores for certain purposes or from searching government databases of motor vehicles, however, it must be reconsidered. Those aspects of the injunction appear most obviously to have been based on the claims for trespass and misappropriation of trade secrets, but the laws of trespass and trade secrets (at least in Georgia) do not support the scope of the injunction. Accordingly, we vacate the injunction in those respects, and we remand for the trial court to reconsider the scope of its injunction. To the extent that the parties on remand may rely on law that varies significantly from state to state, we remind that activities in one state are not due to be enjoined simply because they might be unlawful if done in another state.

Judgment affirmed in part and vacated in part, and case remanded with direction. All the Justices concur.

Decided March 6, 2017 – Reconsideration denied March 30, 2017.

Equity. Fulton Superior Court. Before Judge Goger.

9

Morris, Manning & Martin, John P. MacNaughton, Shannon A. McNulty, Eric A. Larson, for appellants.

Wargo & French, Joseph D. Wargo, Daniel H. Gaynor, Abigail S. Romero, Dustin S. Sharpes, for appellees.