**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be**
*physically received* **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 8, 2018**

# In the Court of Appeals of Georgia

A17A2018. NISSAN NORTH AMERICA, INC. v. WALKER-
JONES NISSAN, LLC.

BRANCH, Judge.

Under Georgia law, generally speaking, car dealership franchisors, such as appellant Nissan North America, Inc., may refuse to agree to a change of ownership or a sale of dealership assets so long as the franchisor shows that the refusal is not arbitrary and that the proposed transferee is unfit or unqualified. Franchisors also have a statutory "right of first refusal" (ROFR) to intervene in a proposed ownership change or sale and thereby acquire the dealership so long as, among other things, the original owner receives the same or better terms as the proposed transaction and the proposed buyer is reimbursed for the expenses of having negotiated to purchase the dealership. The question raised herein is whether these two franchisor powers operate

independently. In other words, we must determine whether a franchisor exercising its ROFR is required to show that its actions are not arbitrary and that the proposed transferee is unfit or unqualified. For the reasons shown below, we hold that the trial court erred by so concluding. We therefore reverse the trial court's grant of an interlocutory injunction and remand for further action consistent with this opinion.

With regard to the proceedings below, the record shows that on February 16, 2017, Walker-Jones Nissan, LLC filed a verified complaint against Nissan and others and sought a temporary restraining order asking the court to block Nissan's attempt to exercise its ROFR in connection with a proposed sale of a Nissan dealership to Walker-Jones. In Counts 1 and 2, Walker-Jones asserted that in attempting to exercise its ROFR, Nissan failed to prove that its decision was not arbitrary and failed to prove that Walker-Jones was unfit or unqualified to be a dealer based on Nissan's prior written standards or qualifications relating to Walker-Jones's business experience, moral character, and financial qualifications as required by OCGA § 10-1-653 (the Transfer Statute). In Count 3, Walker-Jones asserted that in exercising its ROFR, Nissan failed fully to pay Walker-Jones its reasonable expenses incurred in connection with its negotiation and preparation to purchase the dealership as required by the ROFR statute. See OCGA § 10-1-663.1. In Count 4, Walker-Jones asserted a

2

claim of breach of legal and private duties arising out of the Transfer Statute and the ROFR statute. In Counts 5 and 6, it asserted claims of tortious interference. In the remaining counts, Walker-Jones requested temporary and permanent injunctive relief, declaratory relief, and attorney fees and costs.

Walker-Jones moved for a temporary restraining order on the ground that Nissan was required to comply with the Transfer Statute as a part of exercising its ROFR. The trial court granted the TRO the same day and required Walker-Jones to provide a $10,000 bond. Three weeks later, the court held a hearing to determine whether to extend the TRO, and on March 24, 2017, the court granted an interlocutory injunction in favor of Walker-Jones. The court held, among other things, (1) that Walker-Jones was likely to succeed on the merits because Nissan's contractual[1] and statutory ROFR were subject to the Transfer Statue, (2) that Walker-Jones would suffer irreparable injury absent injunctive relief, (3) that injunctive relief would not disserve the public interest, and (4) that the $10,000 bond previously accepted by the court was sufficient security for the interlocutory injunction. Nissan

---

[1] The argument on appeal relates solely to the effect of the Transfer Statute on Nissan's ability to exercise its ROFR. The parties do not dispute that Nissan has both a contractual and statutory ROFR. The contractual ROFR is sufficiently similar to the statutory ROFR such that we need not separately analyze the effect of the Transfer Statute on the contractual ROFR below.

appeals this order and contends that the trial court erred as a matter of law in making these four rulings.

Nissan does not challenge the trial court's findings of fact. See generally OCGA § 9-11-52 (a) (the findings of a trial court in ruling on interlocutory injunctions "shall not be set aside unless clearly erroneous"). The trial court's undisputed findings of fact show that on November 30, 2016, Walker-Jones and certain legal entities referred to as Crosby Nissan entered into an asset purchase agreement concerning the existing Crosby Nissan dealership located in Waycross, as well as agreements regarding the Crosby dealership property and Crosby Nissan's General Motors branded dealership. In furtherance of the transaction, Crosby Nissan and Walker-Jones provided a copy of the asset purchase agreement and the related real estate agreement to Nissan. Nissan thereafter requested that Walker-Jones and Crosby Nissan amend both agreements to separate the acquisition of the GM dealership from the acquisition of Crosby Nissan, and the two parties complied. Nissan then informed Walker-Jones that its ownership structure was unacceptable, after which Walker-Jones made changes thereto and resubmitted to Nissan its application to purchase Crosby Nissan. Nissan did not thereafter provide any further criticism of the ownership or management structure of Walker-Jones.

4

Meanwhile, beginning in mid-January 2017, Nissan contacted and began negotiating with Edgar "Woody" Folsom about a "potential business opportunity," and the two parties entered into a confidentiality agreement related thereto; Folsom also provided Nissan with his personal financial statements and those of his non-Nissan dealerships. On January 25, Folsom submitted an application to become a Nissan dealer, and he and Nissan entered into an "Assignment and Assumption of Right to Purchase Agreement" regarding the Crosby Nissan Dealership and related property. Woody Folsom Nissan of Waycross, Inc. was incorporated shortly thereafter. Therefore, as the trial court found, "while Walker-Jones Nissan was preparing its application and submittals, Nissan was talking with Mr. Folsom regarding his purchase of the Crosby Nissan Dealership."

On or about January 27, 2017, Nissan notified Walker-Jones and Crosby Nissan that it was exercising its ROFR in accordance with its Crosby Nissan dealership agreement and Georgia law. Nissan did not provide any reason in these letters for not agreeing to the proposed sale between Crosby Nissan and Walker-Jones. Nor did Nissan attempt to satisfy the requirements of the Transfer Statute by providing non-arbitrary reasons for its refusal to agree to the sale to Walker-Jones or evidence that Walker-Jones was unfit or unqualified to be a dealer. In fact, the trial

5

court found as a matter of fact that Walker-Jones is both fit and qualified to serve as a Nissan dealer under "any conceivably-applicable objective standards or criteria," and that Nissan did not fully evaluate Walker-Jones nor determine that Walker-Jones or its principals were unfit or unqualified, lacking in business experience or moral character, or financially unqualified.

The court then found as a matter of law that the Transfer Statute was applicable to a franchisor exercising its ROFR and, accordingly, that Walker-Jones had shown a substantial likelihood that it would prevail on the merits. The court also found that Walker-Jones had shown that there was a substantial threat that it would suffer irreparable injury if an injunction was not granted; that the threatened injury outweighed the threatened harm that an injunction might do to Nissan; and that granting the interlocutory injunction would not disserve the public interest. The court therefore granted an interlocutory injunction restraining Nissan from exercising its ROFR. Nissan appealed.

Our Supreme Court has specified that four factors should guide a trial court's decision to impose an interlocutory injunction:

> (1) [whether] there is a substantial threat that the moving party will suffer irreparable injury if the injunction is not granted; (2) [whether] the

threatened injury to the moving party outweighs the threatened harm that the injunction may do to the party being enjoined; (3) [whether] there is a substantial likelihood that the moving party will prevail on the merits of her claims at trial; and (4) [whether] granting the interlocutory injunction will not disserve the public interest.

*Bishop v. Patton*, 288 Ga. 600, 604 (3) (a) (706 SE2d 634) (2011), disapproved on other grounds, *SRB Inv. Servs., LLLP v. Branch Banking & Tr. Co.*, 289 Ga. 1 (709 SE2d 267) (2011). The moving party, however, is not required to prove all four factors. *SRB Inv. Servs.*, 289 Ga. at 5 n. 7. Rather, the trial court must balance the relative equities of the parties, and accordingly, the court has broad discretion in deciding whether injunctive relief is proper. See OCGA § 9-5-8 ("The granting and continuing of injunctions shall always rest in the sound discretion of the judge."); *Bernocchi v. Forcucci*, 279 Ga. 460, 461 (614 SE2d 775) (2005). Thus, "[w]e will not reverse the decision to grant an interlocutory injunction unless the trial court made an error of law that contributed to the decision, there was no evidence on an element essential to relief, or the court manifestly abused its discretion." *TMX Finance Holdings, Inc. v. Drummond Financial Svcs.*, 300 Ga. 835, 837 (797 SE2d 842) (2017) (citation and punctuation omitted).

7

1. Nissan first contends the trial court committed plain legal error when it ruled that Walker-Jones was likely to succeed on the merits because Nissan's contractual and statutory rights of first refusal were subject to the Transfer Statute. Based on the plain language of the Transfer Statute and the ROFR Statute as well as sound rules of construction, we agree.

When construing a statute, "we must presume that the General Assembly meant what it said and said what it meant." *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (citation and punctuation omitted). Thus if the language of the statute "is plain and unambiguous, judicial construction is not only unnecessary but forbidden." *Six Flags Over Ga. II v. Kull*, 276 Ga. 210, 211 (576 SE2d 880) (2003) (citation omitted). Where terms of art are not involved, we look to the common and customary usages of the words and their context. *Zaldivar v. Prickett*, 297 Ga. 589, 591 (1) (774 SE2d 688) (2015). "For context, we may look to other provisions of the same statute, the structure and history of the whole statute, and the other law — constitutional, statutory, and common law alike — that forms the legal background of the statutory provision in question." Id. (citation and punctuation omitted). Even so, "we are not at liberty to read additional provisions into unambiguous statutes with clear terms." *Harris v. Mahone*, 340 Ga. App. 415, 426 (1) (797 SE2d 688) (2017).

The two statutory provisions at issue are found in separate "Parts" of Article 22 of Chapter 1 of Title 10 — the Georgia Motor Vehicle Franchise Practices Act. See OCGA § 10-1-620 et seq. Part 4 is entitled the "Motor Vehicle Franchise Continuation and Succession Act," see OCGA § 10-1-650, and it includes the Transfer Statute. OCGA § 10-1-653. The Transfer Statute provides a mechanism for a franchisor, such as Nissan, to reject a proposed change in management or ownership or a proposed sale of the dealership if the franchisor can show that its decision is not arbitrary and that the proposed new manager, owner, or buyer is unfit or unqualified according to the franchisor's preexisting standards:

> If a new motor vehicle dealer desires to make a change in its executive management or ownership or to sell its principal assets, the new motor vehicle dealer will give the franchisor prior written notice of the proposed change or sale. The franchisor shall not arbitrarily refuse to agree to such proposed change or sale and may not disapprove or withhold approval of such change or sale unless the franchisor can prove that its decision is not arbitrary and that the new management, owner, or transferee is unfit or unqualified to be a dealer based on the franchisor's prior written, reasonable, objective, and uniformly applied, within reasonable classifications, standards or qualifications which directly relate to the prospective transferee's business experience, moral character, and financial qualifications.

9

OCGA § 10-1-653. If a franchisor rejects a proposed change or sale, the franchisor must give written notice of the reasons therefore within 60 days or the proposed transaction shall be deemed approved. Id.

Part 5 of the Georgia Motor Vehicle Franchise Practices Act is entitled the "Motor Vehicle Fair Practices Act." OCGA § 10-1-660. The ROFR statute is found therein, and it provides a mechanism whereby, in the event of a proposed change of ownership or transfer of dealership assets, a franchisor may acquire the original dealer's assets or ownership if six enumerated requirements are met:

> Notwithstanding the terms of any franchise agreement, sales and services agreement, or similar agreement, a franchisor, manufacturer, or distributor shall be permitted to exercise a right of first refusal to acquire a dealer's assets or ownership, in the event of a proposed change of ownership, or transfer of dealership assets, if all of the following requirements are met:
>
> (1) The proposed transfer of the dealership or its assets is of more than 50 percent of the ownership or assets;
> (2) The franchisor notifies the dealer in writing within 60 days of its receipt of the complete written proposal for the proposed sale or transfer on forms generally utilized by the franchisor for such purpose and containing the information required therein and all documents and agreements relating to the proposed sale or transfer;

(3) The exercise of the right of first refusal will result in the dealer and dealer's owners receiving the same or greater consideration as provided for through the terms of the contract related to the proposed change of ownership or transfer of dealership assets;

(4) The proposed change of 50 percent or more of the ownership or of the dealership assets does not involve the transfer or sale of assets or the transfer or issuance of stock by the dealer or one or more dealer owners to a designated family member or members, including a spouse, child, grandchild, spouse of a child or grandchild, brother, sister, or parent of the dealer owner; to a manager who has been employed in the dealership for at least four years and is otherwise qualified as a dealer operator; or to a partnership or corporation owned and controlled by one or more of such persons;

(5) The franchisor agrees to pay the reasonable expenses, including reasonable attorney's fees, which do not exceed the usual customary, and reasonable fees charged for similar work done for other clients incurred by the proposed new owner and transferee before the franchisor's exercise of its right of first refusal in negotiating and implementing the contract for the proposed change of ownership or transfer of dealership assets. However, payment of such expenses and attorney's fees shall not be required if the dealer has not submitted or caused to be submitted an accounting of those expenses within 20 days after the dealer's receipt of the franchisor's written request for such an accounting. Such an accounting may be requested by the franchisor before exercising its right of first refusal; *and*

(6) The franchisor agrees to comply with and be subject to the requirements and restraints as set forth in paragraphs (1) and (2) of

subsection (a) of Code Section 10-1-664.1 and in subsection (b) of Code Section 10-1-664.1.

OCGA § 10-1-663.1 (a) (emphasis supplied).

As can be seen in subsection (3), if the franchisor chooses to exercise the ROFR, it must do so on terms that provide the dealer and dealer's owners with the same or greater consideration than they would have received under the original proposed ownership change or sale. And subsection (5) provides that the franchisor must reimburse the original proposed purchaser for the reasonable expenses, including reasonable attorney's fees, it incurred in negotiating and implementing the proposed transaction for the transfer of the ownership or assets of the dealership. Thus, when a franchisor, such as Nissan in this case, exercises a ROFR under OCGA § 10-1-663.1, the original dealership owner receives the same or more than it would have under the original proposed transaction, and the jilted buyer is reimbursed for the expenses associated with the attempted effort to acquire the dealership. Under the Transfer Statute, there are no similar provisions or remedies. If a franchisor rejects a proposed transferee under that statute on the grounds that the transferee is unfit or unqualified to be a dealer, an owner still desirous of selling must start over by seeking out and negotiating with a new transferee, which might result in terms less favorable

than the original proposal. Likewise, under the Transfer Statute the original proposed transferee is not compensated for expenses incurred attempting to acquire the dealership. See generally *Crivelli v. Gen. Motors Corp.*, 215 F3d 386, 390 (3d Cir. 2000) (Under analogous Pennsylvania law, "[b]oth a right of first refusal and a consent requirement provide a mechanism by which the franchisor can control the selection of its franchisees, but a right of first refusal is a less restrictive form of control, as it requires that the franchisor match the terms offered for the franchise by the third party.").

Thus, by reading the plain language of these two statutes in context with each other, as we must, see *Hendry v. Hendry*, 292 Ga. 1, 3 (734 SE2d 46) (2012), it becomes apparent that they address two separate situations: one in which the legislature allows a franchisor to reject a proposed change or sale on the grounds that the transferee is unfit or unqualified without the franchisor being required to compensate the original parties; and one where the franchisor is allowed to substitute itself into an ongoing transaction but required to compensate the original parties in a specified manner. These differences strongly suggest that the two statutes operate independently. See *Mercedes-Benz USA, LLC v. Star Auto. Co.*, (Case No. 3:11-CV-73 CAR, decided July 15, 2011, M.D. Ga.) (concluding that under Georgia

13

law, "[t]he [Transfer Statute] operates independently from the right of refusal; the provisions are not contradictory.").

Second, the ROFR statute shows that the legislature was clearly capable of specifying the terms under which a ROFR could be exercised; it enumerated six requirements, including one that dictates that franchisors must agree to comply with and be subject to the requirements of a different Code section. See OCGA § 10-1-663.1 (a) (6). Yet, the legislature did not specify that franchisors exercising a ROFR must also meet the requirements of the Transfer Statute, which implies that the legislature rejected such a requirement. See *Land USA, LLC v. Georgia Power Co.*, 297 Ga. 237, 242 n. 10 (773 SE2d 236) (2015) ("the express mention of one thing, implies the exclusion of another"); see, e.g., *Smith v. Stoddard*, 294 Ga. App. 679, 681 (1) (a) (669 SE2d 712) (2008) (finding omission of a right to attorney fees and expenses from uninsured motorist statute "clearly show[ed] that the legislature did not intend to authorize" such remedies). Indeed, the legislature has shown by example that it is capable of expressly linking the requirements of the Transfer Statute to other statutes. See, e.g., OCGA §§ 10-1-651 (j) (2); 10-1-652 (d) (1).[2] Moreover, the

---

[2] OCGA § 10-1-651 (j) (2) (defining "good cause" for termination of a franchise to include compliance with the Transfer Statute); OCGA § 10-1-652 (d) (1) (requiring compliance with the Transfer Statute for succession of the ownership interest of a deceased or incapacitated owner under certain conditions).

legislature enacted the ROFR statute when the Transfer Act was already on the books. Compare 1993 Ga. L. 1585, § 2; 1999 Ga. L. 1194, § 4 (the Transfer Statute) with 2000 Ga. L. 1175, § 2 (the ROFR statute). See also *Retention Alternatives, Ltd. v. Hayward*, 285 Ga. 437, 440 (2) (678 SE2d 877) (2009) (a statute is "presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it").

Third, "[f]or purposes of statutory interpretation, a specific statute will prevail over a general statute, absent any indication of a contrary legislative intent." *Vines v. State*, 269 Ga. 438, 440 (499 SE2d 630) (1998). Although one could argue that by exercising a ROFR, the franchisor is "rejecting" a proposed buyer under the terms of the Transfer Statute, the ROFR statute specifically addresses the exercise of a right of first refusal and provides the six requirements necessary for the exercise of that power. The ROFR statute therefore addresses a different and more specific situation, one in which the proposed transaction is allowed to move forward with the franchisor standing in the shoes of the original proposed transferee.

Finally, to hold that the two statutes apply simultaneously to the present facts would produce absurd results. If a franchisor exercising a ROFR were also required to meet the requirements of the Transfer Statute, then unfit and unqualified suitors

15

would be compensated for their efforts to purchase a dealership, and dealers would be entitled to the benefit of the bargain they struck with unfit and unqualified suitors. The statutes should not be read to produce absurd results such as these. See *Speedway Motorsports v. Pinnacle Bank*, 315 Ga. App. 320, 329 (2) (727 SE2d 151) (2012) (courts should not "give an absurd construction to a statute"); *Spalding County Board of Elections v. McCord*, 287 Ga. 835, 840 (1) (D) (700 SE2d 558) (2010) (statute should not be interpreted to conflict with the natural meaning of the statute or to produce a non-sensical result). Based on all of the above reasons, it follows that the ROFR statute prevails over the Transfer Statute under the facts of this case.

The case of *Southern Motors Chevrolet v. Gen. Motors, LLC*, (Case No. CV414-152, decided Mar. 31, 2015, S.D. Ga.), upon which the trial court relied, is not persuasive. See *Baskin v. Ga. Dept. of Corrections*, 272 Ga. App. 355, 359 (3) (612 SE2d 565) (2005) ("Decisions of federal courts are not binding authority on this court, but their reasoning may be persuasive[.]"). *Southern Motors* entire analysis of the issue raised by the two statutes is limited to the summary statement that "the [Transfer Statute] clearly indicates that Defendant may not [exercise its ROFR] for an arbitrary reason." *Southern Motors*, supra. Accordingly, nothing in *Southern Motors* persuades us that our analysis is in any way incorrect.

16

For the above reasons, including the plain and unambiguous language of the relevant statutes, we hold that the trial court erred as a matter of law in concluding that Nissan was bound by the Transfer Statute when it chose to execute its ROFR. Neither Walker-Jones, in its motion for an injunction, nor the court, in its order granting the motion, justified interlocutory relief based on claims other than that Nissan was required to comply with the Transfer Statute. It follows that the trial court erred by concluding that Walker-Jones was likely to succeed on the merits of claims that are based on that assertion. We further conclude that because Walker-Jones has not asserted any other claims that Nissan is prohibited from exercising its ROFR, the trial court also erred by concluding that Walker-Jones would suffer irreparable injury absent injunctive relief. Furthermore, "[w]here it is apparent that a trial court's judgment rests on an erroneous legal theory, an appellate court cannot affirm." *Gwinnett Cty. v. Davis*, 268 Ga. 653, 655 (492 SE2d 523) (1997); see also *Meinhardt v. Christianson*, 289 Ga. App. 238, 243 (2) (b) (656 SE2d 568) (2008) (order ruling on motion for interlocutory injunction could not be affirmed because it rested on an erroneous legal theory). We therefore reverse the trial court's grant of an interlocutory injunction and remand for further proceedings consistent with this opinion.

2. Nissan's remaining enumerations of error are mooted by our decision in Division 1.

*Judgment reversed. McFadden, P. J., and Bethel, J., concur.*