**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**March 10, 2022**

# In the Court of Appeals of Georgia

A21A1737. GLASS et al. v. FAIRCLOTH et al.

BARNES, Presiding Judge.

Appellants, Ashley Glass, Joshua Glass, Gregory H. Glass, individually and as trustee of the Glass Dynasty Trust (the "Trust"), and Samuel Glass (collectively the "Beneficiaries") appeal from the order of the trial court granting a motion to enforce an earlier order that had denied an interlocutory injunction to prevent the payment of attorney fees to Phillip Faircloth and Ted Saxton, the appellees and former trustees. For the reasons that follow, we vacate the trial court's judgment and remand the case for further action consistent with this opinion.

The facts pertinent to this appeal, and as set forth in *Glass v. Faircloth*, 354 Ga. App. 326, 326-328 (840 SE2d 724) (2020) ("*Glass I*"), demonstrate that

the Trust was established in 2005 by the late Shirley Glass shortly before the death of her husband, Sherwin Glass, who was a successful businessman. The beneficiaries of the Trust are Sherwin's sons (Joel and Greg), Greg's children (David, Joshua, and Ashley), and certain Jewish charities. The trustees were Faircloth and Sexton, who also served as officers in Sherwin's businesses, and Shirley until her death in 2009; Shirley was replaced as a trustee by Greg in 2013.

In 2008, a resolution was signed by Faircloth, Sexton, and Shirley, purporting to compensate the trustees for the first time, paying each trustee $180,000 for the year 2009 and authorizing payments of "reasonable compensation" to the trustees for the prior years.

In 2012, in light of ongoing disputes with the Beneficiaries, Faircloth and Sexton filed a petition in the Superior Court of Gwinnett County seeking various trust accountings, and the court ultimately entered a consent judgment that, in part, approved an amendment to the Trust that entitled trustees to "reasonable compensation." The order also purported to bind Greg and Joel's minor and unborn descendants. The efficacy and scope of this order and the Trust amendment is disputed by the Beneficiaries.

In 2013, Greg, Faircloth, and Sexton executed a release and indemnity agreement stating, in part, that the Trust would indemnify and hold harmless Faircloth and Sexton, absent a final judicial determination of bad faith on their part. As with the consent order, the enforceability of the release and indemnity is disputed by the Beneficiaries.

2

In December 2017, after further disputes over trustee fees and disbursements, the Beneficiaries sued Faircloth and Sexton[.] . . . The Beneficiaries' verified complaint sought removal of Faircloth and Sexton as trustees, damages for breach of fiduciary duty, disgorgement of trustee fees, attorney fees, appointment of a receiver, an accounting, declaratory and injunctive relief, and punitive damages. According to the complaint, as of 2017, the Trust held approximately $43 million in assets, and the trustees had paid themselves at least $2,972,500 in total compensation from 2008 to 2017.

In January 2018, the Beneficiaries filed a verified motion for an interlocutory injunction in that case, seeking immediate removal of Sexton and Faircloth as trustees and to prevent them from paying any trustee fees or attorney fees. That same day, the defendants moved to dismiss the complaint, and in October 2018, the trial court issued a summary order denying the motion to dismiss. In January 2019, the trial court entered an order denying the motion for an injunction [(the "January 2019 Order")][.] [The order also provided for the appointment of a Special Master to determine the reasonableness of the attorneys fees[1]].

---

[1] As directed in the January 2019 Order, a Special Master was appointed by the trial court to assess the reasonableness of Sexton and Faircloth's attorney fees submitted from the inception of the underlying complaint through February 2019 – the issue date of the order appointing the Special Master. In its ensuing report, the Special Master reviewed for reasonableness over $1.6 million in attorney fees and expenses, and based on its assessment, authorized the payment of $922,567.26, or approximately 58 percent of the requested attorney fees and expenses.

In April 2019, the Beneficiaries filed a separate petition in the Superior Court of Fulton County, seeking to modify the Trust pursuant to OCGA § 53-12-61 (c)[.] . . . The same month, the superior court entered an order finding that the conditions of OCGA § 53-12-61 (c) had been met and amending the order to allow removal of any trustee by a majority of the most senior generation of Sherwin's descendant beneficiaries. Faircloth and Sexton moved to vacate the order, and following a hearing, the superior court denied the motion.

In *Glass I*, the Beneficiaries appealed the January 2019 Order denying the motion for an interlocutory order to enjoin the payment of Faircloth and Sexton's attorney fees and the order granting the modification of the Trust. We affirmed the January 2019 Order, finding that the beneficiaries had not shown that they would suffer irreparable harm without an interlocutory injunction, as money damages would provide an adequate remedy at law. *Glass I,* 354 Ga. App. at 328-329 (1). On appeal as a companion case, we also affirmed the trial court's order granting the Trust modification. Id. at 329-332 (2).

The Beneficiaries subsequently removed Faircloth and Sexton as trustees and replaced them with an institutional successor trustee. The trial court entered an order adopting the Special Master's order in its entirety and directing payment of the amount of outstanding attorney fees as determined by the Special Master out of the

4

Trust. Faircloth and Sexton later filed a "Motion to Enforce the Court's January 22, 2019 Order Requiring Interim Advancement of [Their] Attorneys' Fees," requesting enforcement of the January 2019 Order which, they maintained, entitled them to the continuing payment of such fees throughout the pendency of the litigation in accordance with the terms of the Trust, the signed releases, and the indemnity agreement. Faircloth and Sexton noted in their motion that the trial court's assistance was needed in securing the ongoing payment of fees, as they were no longer trustees and did not have access to the Trust funds. The trial court entered an order granting the motion and directing the Trust to advance 50 percent of the fees incurred by one of Faircloth and Sexton's law firms, with the remaining 50 percent "subject to indemnification at the conclusion of this action"; and 100 percent of the fees incurred by a second law firm (the "Enforcement Order"). The Enforcement Order provided that "[s]uch fees shall be advanced by the [Trust] within 20 days of [Faircloth and Sexton's] requests during the pendency of this litigation without being reviewed for a determination of reasonableness," as long as counsel certifies that their fees are reasonable. The Beneficiaries appeal from that order.

1. We note initially that Faircloth and Sexton have filed a motion to dismiss the appeal and assert that this Court lacks jurisdiction because the Enforcement Order is

not a new interlocutory order but, rather, merely an interlocutory enforcement order directing that the January 2019 Order be enforced and as such is not directly appealable. See *Jones v. Peach Trader Inc.*, 302 Ga. 504, 511 (III) (807 SE2d 840) (2017) ("[O]rders modifying or dissolving interlocutory injunctions are appealable only on an interlocutory basis pursuant to OCGA § 5-6-34 (b)"). The Beneficiaries, however, contend that the order is a mandatory interlocutory injunction directly appealable under OGCA § 5-6-34 (a) (4).[2] We agree with the Beneficiaries.

"This Court has a duty to inquire into its jurisdiction to entertain each appeal." (Citation and punctuation omitted.) *City of Dublin School Dist. v. MMT Holdings*, 351 Ga. App. 112, 114 (830 SE2d 487) (2019). "[P]leadings, motions, and orders are construed according to their substance and function and not merely by nomenclature." *Forest City Gun Club v. Chatham County*, 280 Ga. App. 219, 220 (633 SE2d 623) (2006). The January 2019 order held that Faircloth and Sexton were "not enjoined" from using Trust funds to pay the accrued attorney fees and expenses accrued; it did not affirmatively require the payment of such fees at that time or in the future.

---

[2] OCGA § 5-6-34 (a) (4) permits a direct appeal from "[a]ll judgments or orders granting or refusing applications for . . . interlocutory or final injunctions[.]"

6

Instead, the order specified that a Special Master would be appointed to review the fees and expenses for a determination of reasonableness.

The Enforcement Order, however, required the Trust to pay specified percentages of Faircloth and Sexton's attorney fees within 20 days of a new request for such fees on an ongoing basis. Thus, unlike the January 19 Order, the Enforcement Order directs the Trust to "perform [an] affirmative act [– the payment of the fees on a continuing basis]." *Glynn County v. Waters*, 268 Ga. 500, 501 (1) (492 SE2d 370) (1997) (finding that "[a]lthough it is denominated as a 'supplemental' order, it is the first order in the case which requires Glynn County to perform the affirmative act of placing Waters in another position. As the grant of a mandatory injunction, the order is directly appealable pursuant to OCGA § 5-6-34 (a) (4), even though the entire case lacks 'finality' because of the pending claim for lost wages") (citations omitted). The Enforcement Order also grants "relief [that] is wholly distinct from the relief outlined in the [January 2019 Order]." *Yakob v. Kidist Mariam Ethiopian Orthodox Tewahedo Church*, 359 Ga. App. 13, 19 (1) (a) (856 SE2d 722) (2021) (noting that, even though the trial court had entered an order clarifying that the new order was not a new injunction but was intended only to modify prior interlocutory injunctions, because the new order compelled attendance at church

board meetings or, alternatively, changed the quorum requirements if fewer than 14 board members attended, that relief was distinct from the relief outlined in the earlier interlocutory injunctions, and thus constituted a new injunction subject to direct appeal); *MSM Poly v. Textile Rubber & Chem Co.*, 353 Ga. App. 538, 539 (1) (839 SE2d 4) (2020) (holding that the trial court's order had directed action which effectively gave the appellee all of the injunctive relief that the appellee sought, and finding that the nature of the trial court's order thus granted an injunction, which was directly appealable).

Accordingly, in construing the substance and function of the Enforcement Order, we find that the trial court effectively granted Faircloth and Sexton an interlocutory injunction which is directly appealable pursuant to OCGA § 5-6-34 (a) (4). *Glynn County*, 268 Ga. at 501 (1); *Yakob*, 359 Ga. App. at 19 (1) (a); *MSM Poly*, 353 Ga. App. at 539 (1). See also *Dolinger v. Driver*, 269 Ga. 141, 142 (1) (498 SE2d 252) (1998) ("[A]lthough the injunction in this case [was] denominated as a TRO, there is no magic in nomenclature. A document is to be construed by its substance or function, rather than by its name. Thus, where a TRO is entered after a lengthy

adversary hearing and effectively grants the plaintiff all of the relief [it] sought, it is directly appealable.") (citations omitted).[3]

2. Having determined that the trial court's Enforcement Order was not simply a order modifying or enforcing an existing interlocutory injunction, but rather a new and separate interlocutory injunction, we note that "an interlocutory injunction is an extraordinary remedy and the power to grant it must be prudently and cautiously exercised." (Punctuation omitted.) *SRB Investment Svcs. v. Branch Banking and Trust*, 289 Ga. 1, 5 (3) (709 SE2d 267) (2011). To that end,

> in deciding whether to issue an interlocutory injunction, a trial court should consider whether: (1) there is a substantial threat that the moving party will suffer irreparable injury if the injunction is not granted; (2) the threatened injury to the moving party outweighs the threatened harm that the injunction may do to the party being enjoined; (3) there is a substantial likelihood that the moving party will prevail on the merits of her claims at trial; and (4) granting the interlocutory injunction will not disserve the public interest.

(Citation and punctuation omitted.) Id. We will not reverse the decision to grant an interlocutory injunction "unless the trial court made an error of law that contributed to the decision, there was no evidence on an element essential to relief, or the court

---

[3] Faircloth and Sexton's motion to dismiss is denied.

manifestly abused its discretion."(Citation and punctuation omitted.) *Nemchik v. Riggs*, 300 Ga. 363, 366 (2) (792 SE2d 347) (2016).

In this case, the trial court determined that the subject order merely enforced the January 2019 Order, rather than granted Faircloth and Sexton a new and separate interlocutory injunction. Thus, the trial court did not consider the granting of such motion under the proper legal framework– that of an interlocutory injunction. The trial court therefore has not yet applied the proper legal standard and exercised its discretion to decide whether Faircloth and Sexton should be granted an interlocutory injunction in the first instance. See *Humphries v. Weekly*, 360 Ga. App. 59, 62 (1) (860 SE2d 619) (2021) ("vacat[ing] the trial court's order and remand[ing] the case with direction to the trial court to make appropriate factual findings and legal conclusions under the applicable standard"); *Coleman v. DaimlerChrysler Svcs. of N. A.*, 276 Ga. App. 336, 339 (623 SE2d 189) (2005) (vacating order and remanding case for consideration under the proper legal framework); *Padilla v. Melendez*, 228 Ga. App. 460, 463 (2) (491 SE2d 905) (1997) (noting that when this Court is "unable to ascertain whether the lower court has exercised its discretion, the appropriate course for the appellate court is not to perform a de novo review of the evidence in the guise of a harmless error analysis, but instead is to vacate the judgment and

10

remand the case to the lower court for further proceedings consistent with its statutory duty") (citation and punctuation omitted). Thus, as the trial court erred in granting the Enforcement Order by applying the wrong legal standard, we vacate the Enforcement Order and remand the case for consideration under the appropriate standard.

*Judgment vacated and remanded with direction. Gobeil and Markle, JJ., concur.*

11