23503, 23504.   GREEN et al. v. AUSTIN et al. (two cases).

ARGUED JUNE 13, 1966—DECIDED JULY 13, 1966—
REHEARING DENIED JULY 28, 1966.

*Howe & Murphy, D. B. Howe, Harold L. Murphy, Newell Edenfield, McChesney H. Jeffries,* for appellants in Case No. 23503.

*Charles T. Zink, McChesney H. Jeffries, Dan Winn, Solicitor General, Otis C. Bell, Hansell, Post, Brandon & Dorsey, H. Thaxton Monk, Jr., J. T. Perren, Newell Edenfield,* for appellees.

*Edenfield, Heyman & Sizemore, Newell Edenfield, Maurice N. Maloof, Perren & Lane, John T. Perren, Hansell, Post, Brandon & Dorsey, McChesney H. Jeffries, Charles T. Zink, Otis C. Bell, H. Thaxton Monk, Jr.,* for appellants in Case No. 23504.

*Otis C. Bell, H. Thaxton Monk, Jr., McChesney H. Jeffries,* for appellees.

ALMAND, Justice. W. B. Austin brought an equitable petition in Paulding Superior Court against W. O. Green and Clinton Austin, executors of the will of T. J. Gray, for a declaratory judgment interpreting the provisions of said will. Petitioner alleged that the estate consisted of certain farm lands including personal property, stocks and government bonds; that it was "not feasible, equitable or profitable to operate the farm" and that it was necessary for petitioner as an heir of the testator (Gray) to bring the action in order to protect his share of the estate. Petitioner also alleged that the operation of the farms in the estate has resulted in loss of money since the death of the testator, and Item 5 of the will placing the estate in trust is void as a perpetuity. A copy of the will was attached to the petition. The portions of the will which must be construed here are as follows: "Item Four: I hereby direct my executors, aforesaid to keep my estate intact for the purpose and in the manner hereinafter set out and that the house where I now live and the store I now operate be rented by my executors and direct that the executors maintain fire and tornado insurance on said buildings in a sum consistent with their then value and I further direct that the farms be operated, keeping for that purpose two (2) tractors and equipment, truck and six (6) mules. Also keep and maintain thirty (30) head of female cattle and three (3) head of male cattle so long as is profitable. That a suitable superintendent be employed to oversee the farm operations and that the house next to Bethany Christian Church (on State Highway No. 61) be used by such overseer as a residence. That farm equipment is to be kept in good repair and not used to do custom work but used exclusively for the Gray farms. The farms to be operated in order to establish and maintain 'The T. J. and Ella Gray Memorial Fund' to be used as hereinafter provided. Item Five: I give and bequeath and devise to W. O. Green and Clinton Austin, and their respective successors heretofore named at their death or disqualification, as outlined in Item Three, as trustees, all of my property wherever located and of every kind and character, real and personal, in trust, to manage, operate, maintain and run and to use the income in the following manner and for the following purposes, to wit:

"$250.00 per year to be paid to Mt. Zion Baptist Church (on Georgia State Highway No. 61) for the maintenance of the church cemetery in said county.

"$25.00 per year to be paid to the pastor of that church and chorister.

"Also a sufficient sum each year to pay one-half of the premium of $12,000.00 of comprehensive coverage insurance on the church building.

"Also $35.00 per year to Nebo and New Harmony churches (in said county) for the maintenance of church graveyards.

"Each of these items to be paid on the first (1st) day of January of each year if practical.

"My trustees named above, are hereby expressly authorized to sell at either public or private sale without court order, once in each twenty (20) years the saw timber on my lands and they are authorized to divide so much of said fund, as exceeds the amount necessary to maintain 'The T. J. and Ella Gray Memorial Fund' at a level sufficient to pay the items listed above, expenses of operating the farms, and expenses of administration, to the following persons, share and share alike, to wit: . . ." At this point, testator listed a number of beneficiaries which included not only his heirs at law but those of his wife. "Item Nine: In the event any part of this will is ever declared void for any reason or becomes impossible to carry out I direct that my executors and or trustees, as the case may be, seek the direction of the superior court as to how best to carry out my intentions and objects, having in mind that the primary object is the maintenance of The T. J. and Ella Gray Memorial Fund for the purposes outlined in Item Five above. If for any reason the farms have to be sold or the provisions of this will cannot be carried out I direct that my executors or trustees, as may then be the case, sell said farms to the best possible advantage at public or private sale without court order and that $10,000.00 of the proceeds of such sale be invested and added to my First National Bank Stock (of $2,000.00) and my present U. S. Government Bonds (of $7,000.00) (both of which are to be kept) and that the income from these three items be used to pay the items listed in Item Five, perpetually."

The defendant executors filed an answer and cross petition in which they showed that they were operating the Gray farms; that the costs and expenses of such operation exceeded the income therefrom and that there was a continuing reduction in the assets of the estate. Defendants prayed that the real and personal property be sold in the interest of the beneficiaries; that $40,000 be set aside for "The T. J. and Ella Gray Memorial Fund" to pay the charitable bequests in Items 5 and 11 of the will and that the remainder of the proceeds from the sale be paid to the beneficiaries named in Item 5. At the request of the defendant executors, the court ordered that the beneficiaries named in Item 5 and all of the heirs of the estate as well as the solicitor general of the circuit be made parties defendant to the proceedings.

The record contains a stipulation of fact between the petitioner and the defendant executors which sets the value of the estate at $233,500 and shows that the beneficiaries named in Item 5 are heirs of the testator (the Austin group) and heirs of his wife (the Green group).

On March 7, 1966, the court handed down its judgment in which it (1) ordered and directed the executors to liquidate the estate as it was impractical and detrimental to the estate to continue to operate and manage the properties and (2) found that Item 9 of the will must be activated and the specified charities should receive the amount stated therein. The trial court concluded that no excess in liquidation proceeds could go either to the charities or beneficiaries named in Item 5 and there being no residuary clause in the will or other direction in Item 9, the excess in liquidation proceeds should go to the heirs at law of the testator only (the Austin group).

There are two appeals before this court from the judgment of the trial court. In appeal No. 23503, the heirs of testator's wife (the Green group) appeal, and in appeal No. 23504, the defendant executors of the will appeal.

■ In enumerations of error Nos. 1 and 2, the third party defendants, the Green group and appellants in appeal No. 23503, assign error on the trial court having entered its judgment without the intervention of a jury and upon the facts stipulated by

petitioner and the defendant executors. Appellants contend that they did not waive their right to a jury trial as to matters of fact in the case; that appellants made no agreements or stipulations of fact for submission to the court and that under the status of the case, the court should have submitted all issues of fact to the jury.

These contentions are without merit. Art. VI, Sec. IV, Par. VII of the Georgia Constitution (*Code Ann.* § 2-3907) provides that "the Court [Superior] shall render judgment without the verdict of a jury in all civil cases, except actions ex delicto, where no issuable defense is filed except as otherwise provided in this Constitution, and subject to the right of trial by a jury on written demand of either party." It appears from the record that the appellants here neither filed pleadings of any kind in the trial court nor made any request for a jury. It has been held that failure to request a trial by jury under these circumstances is a waiver thereof. *Flint River Steamboat Co. v. Foster*, 5 Ga. 194 (8) (48 AD 248); *Sutton v. Gunn*, 86 Ga. 652, 657 (12 SE 979).

■ The appellants in appeal No. 23503 assign error on the judgment of the trial court dated March 7, 1966, in enumerations of error 3, 4, 5, and 6, and the defendant executors, appellants in appeal No. 23504, also assign error upon this judgment in their enumerations Nos. 1 through 8. All of these enumerations will be considered together.

Appellants do not contend that the trust property in Item 5 should not be sold. It has been stipulated that the farms are losing money, and there is no question but that the trust as set up by the testator violates the rule against perpetuities. Therefore, the question which this court must answer is: After Item 9 of the will is activated and $10,000 of the proceeds set aside for the "Memorial Fund," should the remainder of the corpus be distributed to those beneficiaries named in Item 5 or just to the heirs at law of the testator as would be the case if no effect at all is given to Item 5?

The trust as it is set out by the testator in Item 5 must fail under the rule against perpetuities. *Code* § 85-707 as amended by Ga. L. 1953, Jan. Sess., pp. 42-44. The income from the trust

was to be paid for both charitable and noncharitable purposes. The charitable purpose for which the trust was established is not subject to the operation of the rule, but the non-charitable purposes are void if they come within the rule. The trust here is a classic example of what the text writers term a "mixed trust." Where there is no method by which the charitable and noncharitable portions of the trust can be separated and the charitable portion preserved, the entire trust has to fail under the rule. See Bogert, Trusts & Trustees (2d Ed.) § 372; Scott, Trusts (2d Ed.), Vol. IV, § 398.2 (4). There is no way to allocate specific portions of the corpus of the trust to the charitable and noncharitable objects thereof.

Appellants rely on the cases of *Smith v. Dunwoody*, 19 Ga. 237, and *Adams v. Bass*, 18 Ga. 130, to support their contention that the gift of the excess income from the trust to the named beneficiaries is a gift of a portion of the corpus if the gift of income fails under the rule against perpetuities. The *Smith* case is distinguishable because there the testator did not state any alternative in the event the trust could not be carried out as did the testator in the instant case. In addition, all of the income from the trust was left to named heirs and legatees except for certain charges upon the corpus which would be made certain and would not be deducted perpetually. Smith intended that the income beneficiaries be the primary recipients of the property. However, here the testator states that "the primary object is the maintenance of 'The T. J. and Ella Gray Memorial Fund.'" In the *Adams* case, the trust income was to be "equally divided, year after year, between my nephews and nieces." There the court had no problem in dividing the corpus among the beneficiaries when the trust failed as a perpetuity because the charges to be subtracted from the amount left in trust would occur only once leaving a definite balance for the trust. In the instant case however, the estate was to be kept in trust perpetually and the expenses incurred thereby would also occur perpetually; and vary from year to year. This uncertainty is illustrated by the fact that the estate is producing no income at all at the present time. We therefore hold that the trust in this case as outlined in Items 4 and 5 of testator's

will must fail entirely since the charitable and noncharitable provisions thereof cannot be separated. The solution reached by the court in the *Smith* and *Adams* cases cannot be applied here.

"While cases involving the construction of wills may guide us in the general rules of construction, they should not be considered as binding authority unless the cited case is in every respect directly in point, and agreed in every respect with the will to be construed." *Refinance Corp. of Ga. v. Wilson*, 183 Ga. 336, 339 (188 SE 707). See also *Comer v. Citizens &c. Nat. Bank*, 182 Ga. 1, 5 (185 SE 77).

Since the parties agree that the properties must be sold, and we hold that the entire trust in Item 5 fails, the trial court was correct in finding that Item 9 of the will must be activated.

With the activation of Item 9, $10,000 of the proceeds from the liquidation of the estate are to be set aside for the payment of the charitable items listed in Item 5. The trial court ruled that as to the remainder of the proceeds, the testator died intestate and only his heirs at law are entitled thereto. We are of the opinion that the trial court construed the will correctly in this regard. Therefore, we hold that where the trust in Item 5 fails entirely, as we find it does, and the properties have to be sold, as all parties agree is the case, then Item 9 controls the distribution of the proceeds from the sale of the properties. Except for the amount set aside for the charitable items, the testator has died intestate as to the excess in proceeds from said sale, and these funds must be held in a resulting trust for the heirs at law of the testator only. *Code* § 108-106 (4).

The trial court construed the will correctly.

*Judgment affirmed. All the Justices concur, except Candler, P. J., who dissents.*