S16A0972. VETERANS PARKWAY DEVELOPERS, LLC v. RMW DEVELOPMENT FUND II, LLC.

(793 SE2d 398)

HINES, Presiding Justice.

This is an appeal by defendant Veterans Parkway Developers, LLC ("VPD") from an order of the Superior Court of Lumpkin County granting injunctive relief and requiring an accounting in this suit by RMW Development Fund II, LLC ("RMW") stemming from VPD's management of Veterans Parkway Apartments, LLC (hereinafter the "Company").[1] The order at issue granted RMW an interlocutory injunction (1) enjoining VPD from using funds in its possession or

---

[1] The Company was not named as a party in the lawsuit.

control to construct a second entrance to an apartment complex in Columbus (hereinafter the "Property"), constructed and managed by the Company, (2) prohibiting VPD from using funds for any purpose other than the normal day-to-day expenses of the Property, and (3) requiring VPD to submit a monthly report of its expenses to the superior court, with copies to counsel for the parties. For the reasons that follow, we reverse.

Both VPD and RMW purport to be Georgia limited liability companies that are in the business of buying, selling, and managing shopping centers, apartments, office buildings, vacant land, and otherwise investing in real and personal properties. On or about November 2009, VPD and RMW formed the Company. According to the Company's operating agreement, its purpose is to acquire and own the Property; to own, hold, sell, manage, operate, exchange or otherwise dispose of the Property; to cause the Property to be held and managed for the benefit of the Company and its members; to cause the Company to sell, exchange, or otherwise dispose of the Property; and to do all things attendant or incidental to any of the above as the managing member of the Company determines to be necessary or appropriate. Also according to the agreement, VPD is the managing member of the Company and holds a 25% interest, while RMW is an associate member and holds a 75% interest.

The acquisition and construction of the Property was to be financed by a Department of Housing and Urban Development ("HUD")-insured mortgage loan. Consequently, a loan to the Company was obtained from Berkadia Commercial Mortgage, LLC in the amount of $24,423,200 ("Berkadia loan"), and it closed on November 18, 2010. In connection with obtaining the Berkadia loan, RMW made a loan to VPD in the amount of $490,000, referred to as the "Pre-development Loan," and loans to VPD and the Company in the amount of $511,932, referred to as the "Escrow Loan," and in the amount of $119,005, referred to as the "Demolition Loan."[2]

On May 27, 2015, RMW filed the present complaint against VPD alleging VPD's breach of contract by its entering into an unauthorized management agreement and thereby paying an unauthorized management fee, and a claim for what RMW termed "promissory estoppel," stemming from VPD's alleged failure to use some of the Company's funds for partial repayment of the Escrow Loan; RMW asked for VPD's removal as manager of the Company and for the costs of litigation, including an award of reasonable attorney fees.

---

[2] RMW has filed three lawsuits, separate from the present action, to collect on each of those loans.

Prior to the filing of such complaint, on May 8, 2015, the Company purchased a 60-foot strip of land for the purpose of creating a second entrance to the Property. VPD maintained that the construction of this second entrance was necessary to alleviate problems posed by the decision of the Georgia Department of Transportation ("DOT") to place a median down the length of the parkway fronting the main entrance to the Property; VPD asserted that construction of the median presented safety issues and caused residents of the Property to be unable to turn more than one way in order to leave the Property, and as a result, occupancy rates at the Property had begun to decline.

Even though in the present complaint there was no specific request by RMW for injunctive relief regarding construction of a second entrance to the Property, on July 9, 2015, RMW filed an "Emergency Motion for Interlocutory Injunction" in the action requesting that VPD, as the managing member of the Company, be prohibited from using funds then in its possession to construct a second entrance to the Property, and for any purpose other than the routine daily expenses of the Property; RMW asked that the requested interlocutory injunction continue through the pendency of the action and any appeals. On July 17, 2015, the Company entered into a construction contract for completion of the second entrance to the Property.

At a July 24, 2015 hearing on RMW's "Motion for Emergency Interlocutory Injunction," RMW acknowledged that it had known for some time about the issues posed by the DOT's median project and of ongoing discussion about purchasing additional land for the creation of the second entrance to the Property, but maintained that it had not been made aware of any actual contracts in that regard being signed by VPD as the managing member until after the filing of the present suit. RMW expressed its concern that it did not "want the money to go away," but nevertheless maintained that it sought injunctive relief because the Property would be permanently altered by the construction of the second entrance, which realistically could not be undone. Following the hearing, the superior court entered, in essence, a temporary restraining order ("TRO") enjoining VPD from constructing the second entrance to the Property and from using funds in its possession for such construction or for any purpose other than the "normal, day-to-day expenses of the Property."

A subsequent hearing on an interlocutory injunction was held on August 20, 2015, at which RMW once again argued that it could not undo any construction of the second entrance to the Property, and therefore, it had no remedy at law. VPD countered that RMW was, in reality, concerned about money being spent on the construction of the

second entrance instead of being used to repay the loans made by RMW, and that any appropriate redress was monetary damages. Ultimately, the superior court issued the present "Order Granting Injunction and Requiring Accounting to the Court."

VPD contends that the injunction was not authorized because RMW had an adequate remedy at law; because the injunction was issued in clear violation of the "common law business judgment rule," which protected VPD's decisions as managing member of the Company; because there was no risk of irreparable harm to RMW; because RMW was merely a note creditor of VPD, and therefore, not entitled to an injunction regarding VPD's or the Company's assets; and because RMW was barred from pursuing equitable relief because of its unclean hands and laches.

The purpose of an interlocutory injunction is to preserve the status quo, as well as balance the conveniences of the parties, pending final resolution of the litigation. *Grossi Consulting, LLC v. Sterling Currency Group, LLC*, 290 Ga. 386, 388 (1) (722 SE2d 44) (2012). A trial court has the discretion to grant interlocutory injunctive relief based on the circumstances of the case, but the power to do so "shall be prudently and cautiously exercised and, except in clear and urgent cases, should not be resorted to." OCGA § 9-5-8.

In determining if an interlocutory injunction should issue, a trial court is to consider:

> (1) whether there exists a substantial threat that a moving party will suffer irreparable injury if the injunction is not granted; (2) whether the threatened injury to the moving party outweighs the threat and harm that the injunction may do to the party being enjoined; (3) whether there is a substantial likelihood that the moving party will prevail on the merits at trial; and (4) whether granting the interlocutory injunction will not disserve the public interest.

*Davis v. VCP South, LLC*, 297 Ga. 616, 621-622 (1) (b) (774 SE2d 606) (2015). Furthermore, "[e]quity will not take cognizance of a plain legal right where an adequate and complete remedy is provided by law[.]" OCGA § 23-1-4. That is precisely the situation in this case.

First, it should be noted that there is no indication, either in the order granting the equitable relief or at the hearing in the matter, that the superior court fully considered the aforementioned factors prior to its imposition of the interlocutory injunction. But, even assuming that the superior court did utilize the appropriate analysis prior to issuing the injunction, its conclusion that interlocutory injunctive relief was warranted is not supported by the record. The

irreparable harm or injuries claimed by RMW were that the construction of the second entrance to the Property would "permanently and significantly alter the physical layout of the [P]roperty," that the construction project would incur a "significant cost,"[3] and that because RMW was seeking to remove VPD as the managing member of the Company, "significant expenses of [the Company] should be limited to day-to-day expenses of the Property," as the funds at issue should be used for loan repayment.

Indeed, real property may be "sufficiently unique" so that equitable remedies are needed to protect a party's interest in the land. *Focus Entertainment Intl., Inc. v. Partridge Greene, Inc.*, 253 Ga. App. 121, 127 (4) (a) (558 SE2d 440) (2001). RMW claims that as a member of the Company, it has an interest in the land owned by the Company where the apartments have been constructed, and that such interest is threatened with harm by the permanent alteration of the land due to construction of the second entrance. However, a member's interest in a "LLC," a limited liability company, is itself only a personal property interest; a member's stake in a LLC is not an interest in real property or an interest in any specific property of the LLC. OCGA § 14-11-501 (a);[4] *Meadows Springs, LLC v. IH Riverdale, LLC*, 286 Ga. 701, 704 (1) (690 SE2d 842) (2010). Therefore, having no interest in the land at issue, RMW was not in a position to request equitable injunctive relief regarding the land based upon a claim that the land was threatened with harm. *Focus Entertainment Intl., Inc. v. Partridge Greene, Inc.*, supra at 127 (4) (a).

As to RMW's concern that the construction of the second entrance would cost a substantial sum of money, thereby lessening its chances of recovering the money it is owed by the Company, while RMW has alleged that the Company does not have the funds to satisfy its debts to RMW, RMW has not demonstrated that damages could not be recovered from VPD, the only entity that is a party defendant in the present suit. See *Murphy v. McMaster*, 285 Ga. 622, 624 (680 SE2d 848) (2009). Again, equity will not step in where there is an adequate and complete remedy at law. OCGA § 23-1-4. Even if the superior court found that the construction of the second entrance was permanent, there was no showing that the cost of it or any consequent financial loss could not be recovered from VPD as damages. Simply,

---

[3] In its "Emergency Motion for Interlocutory Injunction" RMW maintained that the proposed cost of the second entrance was $184,241.

[4] OCGA § 14-11-501 (a) provides: "A limited liability company interest is personal property. A member has no interest in specific limited liability company property."

there was no showing that there was not an adequate and complete legal remedy available to RMW.

As to the portion of the superior court's order prohibiting VPD "from using funds for any purpose other than the normal day-to-day expenses of the [P]roperty," it likewise cannot be sustained. This provision of the interlocutory injunction is linked to construction of the second entrance to the Property and RMW's claims of VPD's breach of contract in regard to the management of the Company. Here again, RMW did not demonstrate that it would not be able to recover damages from VPD, should it be able to prove any of its alleged causes of action. Finally, the part of the interlocutory injunction requiring a monthly accounting of expenses fails. It too stems from RMW's concern about expenditures made by VPD in its role as managing member of the Company. Even assuming arguendo that RMW could produce evidence that VPD, in its role as managing member, had mismanaged or otherwise improperly used allocated funds, there was no showing that a recovery of damages from VPD was not a viable option.

In summary, the superior court abused its discretion in granting the interlocutory injunction, in toto. *Davis v. VCP South, LLC*, supra at 621-622 (1) (b). Accordingly, it cannot stand.[5]

*Judgment reversed. All the Justices concur.*

DECIDED NOVEMBER 7, 2016.

*George E. Butler II*, for appellant.
*Kumar, Prabhu, Patel & Banerjee, Roy A. Banerjee*, for appellee.
*Balch & Bingham, Michael J. Bowers, Christopher S. Anulewicz*, amici curiae.

---

[5] Our determination regarding the failure to show the unavailability or inadequacy of legal redress renders it unnecessary to address VPD's remaining challenges to the interlocutory injunction.