**FOURTH DIVISION**
**DOYLE, P. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 10, 2020**

# In the Court of Appeals of Georgia

A19A2190. GLASS et al. v. FAIRCLOTH et al.                    DO-076

A19A2393. FAIRCLOTH et al. v. GLASS et al.                    DO-085

DOYLE, Presiding Judge.

These companion cases arise from a series of disputes between trust beneficiaries and trustees over fees paid to the trustees (and their attorneys) of The Glass Dynasty Trust ("the Trust"). In Case No. A19A2190, plaintiffs Elizabeth Glass, as next friend of Ashley Glass; Gregory Glass, individually and as a trustee of the Trust; and Joel[1] Glass (collectively, "the Beneficiaries") appeal from the denial of their motion for an interlocutory injunction to prevent fee payments during the pendency of underlying litigation they initiated in 2017 challenging the trustees' authority and conduct. In Case No. A19A2393, trustees Phillip Faircloth and Ted

---

[1] Joel, as identified in pleadings, is Samuel J. Glass. Joel is his middle name.

Sexton appeal from an order denying their motion to vacate an order granting a separate petition filed by the beneficiaries in 2019 to amend the trust pursuant to OCGA § 53-12-61 (c) (1), thereby authorizing the replacement of the trustees with corporate trustees. For the reasons that follow, we affirm the judgment in each case.

The record shows that the Trust was established in 2005 by the late Shirley Glass shortly before the death of her husband, Sherwin Glass, who was a successful businessman. The beneficiaries of the Trust are Sherwin's sons (Joel and Greg), Greg's children (David, Joshua, and Ashley), and certain Jewish charities. The trustees were Faircloth and Sexton, who also served as officers in Sherwin's businesses, and Shirley until her death in 2009; Shirley was replaced as a trustee by Greg in 2013.

In 2008, a resolution was signed by Faircloth, Sexton, and Shirley, purporting to compensate the trustees for the first time, paying each trustee $180,000 for the year of 2009 and authorizing payments of "reasonable compensation" to the trustees for the prior years.

In 2012, in light of ongoing disputes with the beneficiaries, Faircloth and Sexton filed a petition in the Superior Court of Gwinnett County seeking various trust accountings, and the court ultimately entered a consent judgment that, in part,

2

approved an amendment to the Trust that entitled trustees to "reasonable compensation." The order also purported to bind Greg and Joel's minor and unborn descendants. The efficacy and scope of this order and the Trust amendment is disputed by the Beneficiaries.

In 2013, Greg, Faircloth, and Sexton executed a release and indemnity agreement stating, in part, that the Trust would indemnify and hold harmless Faircloth and Sexton, absent a final judicial determination of bad faith on their part. As with the consent order, the enforceability of the release and indemnity is disputed by the Beneficiaries.

In December 2017, after further disputes over trustee fees and disbursements, the Beneficiaries sued Faircloth and Sexton, resulting in the underlying suit in Case No. A19A2190. The Beneficiaries' verified complaint sought removal of Faircloth and Sexton as trustees, damages for breach of fiduciary duty, disgorgement of trustee fees, attorney fees, appointment of a receiver, an accounting, declaratory and injunctive relief, and punitive damages. According to the complaint, as of 2017, the Trust held approximately $43 million in assets, and the trustees had paid themselves at least $2,972,500 in total compensation from 2008 to 2017.

3

In January 2018, the Beneficiaries filed a verified motion for an interlocutory injunction in that case, seeking immediate removal of Sexton and Faircloth as trustees and to prevent them from paying any trustee fees or attorney fees. That same day, the defendants moved to dismiss the complaint, and in October 2018, the trial court issued a summary order denying the motion to dismiss.[2] In January 2019, the trial court entered an order denying the motion for an injunction, giving rise to the appeal in Case No. A19A2190.

In April 2019, the Beneficiaries filed a separate petition in the Superior Court of Fulton County, seeking to modify the Trust pursuant to OCGA § 53-12-61 (c), resulting in the underlying action in Case No. A19A2393. The same month, the superior court entered an order finding that the conditions of OCGA § 35-12-61(c) had been met and amending the order to allow removal of any trustee by a majority of the most senior generation of Sherwin's descendant beneficiaries.[3] Sexton and

[2] The parties submitted copious briefing and argument on the motion, debating the effect of various events leading up to the dispute, but the order does not state a specific rationale for the court's ruling.

[3] Pursuant to this order, the Trust has been modified, and Sexton and Faircloth are no longer trustees. This does not moot the appeal in A19A2190 because that action, which remains pending, also addresses other issues such as punitive damages and the reasonableness of trustee and attorney fee payments.

4

Faircloth moved to vacate the order, and following a hearing,[4] the superior court denied the motion. Sexton and Faircloth appeal that order in Case No. A19A2393.

*Case No. A19A2190*

1. As noted above, the Beneficiaries appeal from the trial court's order denying their motion for an interlocutory injunction in their pending litigation. Despite the respective parties' multiple rounds of appellate briefing as to the merits of the Beneficiaries' claims,[5] we discern no basis for reversal of the trial court's decision on appeal, i.e., the denial of an interlocutory injunction.

> Whether an interlocutory injunction is warranted is a matter committed to the discretion of the trial court. In exercising this discretion, a trial court generally must consider: (1) whether there exists a substantial threat that a moving party will suffer irreparable injury if the injunction is not granted; (2) whether the threatened injury to the moving party outweighs the threat and harm that the injunction may do to the party being enjoined; (3) whether there is a substantial likelihood that the moving party will prevail on the merits at trial; and (4) whether

---

[4] According to the superior court's order, "counsel for just about everyone involved in any aspect of the Glass Dynasty Trust litigation (which has sprawled across many years and multiple circuits) was present [in the trial court] and given an opportunity to be heard."

[5] The trial court's order does not contain a detailed rationale for its ruling, nor does it expressly make a final ruling as to the merits of the Beneficiaries' claims.

5

granting the interlocutory injunction will not disserve the public interest. And although one seeking interlocutory injunctive relief need not always prove all four of these factors, a trial court must keep in mind that an interlocutory injunction is an extraordinary remedy, and the power to grant it must be prudently and cautiously exercised. We will not reverse the decision to grant an interlocutory injunction unless the trial court made an error of law that contributed to the decision, there was no evidence on an element essential to relief, or the court manifestly abused its discretion.[6]

Here, the crux of the dispute between Sexton and Faircloth and the Beneficiaries is the amount of money the trustees have paid themselves (and their attorneys) for their services. But the Beneficiaries do not demonstrate an irreparable harm they would suffer without an injunction preventing payment of reasonable fees to the trustees. For example, they have not shown the insolvency of the trustees (or their law firms), and the money in dispute is not unique, such as real property. Further, it is plain that the Beneficiaries have a remedy at law, and "equity will not step in where there is an adequate and complete remedy at law."[7] Therefore,

---

[6] (Citations and punctuation omitted.) *TMX Financial Holdings, Inc. v. Drummond Financial Svcs., LLC*, 300 Ga. 835, 836-837 (797 SE2d 842) (2017).

[7] *Veterans Parkway Developers, LLC v. RMW Dev. Fund II, LLC*, 300 Ga. 99, 103 (793 SE2d 398) (2016) (reversing the grant of an interlocutory injunction because "there was no showing that . . . any consequent financial loss could not be

[e]ven assuming arguendo that [the Beneficiaries] could produce evidence that [Sexton and Faircloth], in [their] role[s] as managing [trustees], had mismanaged or otherwise improperly used allocated funds, there was no showing that a recovery of damages from [them] was not a viable option.[8]

Based on the record before us, we discern no abuse of discretion by the trial court in denying the interlocutory injunction.

*Case No. A19A2393*

2. In this case, Sexton and Faircloth appeal from the superior court orders granting the trust modification pursuant to OCGA § 53-12-61 (c) ("the Modification Statute") and denying their motion to vacate that order.[9] The questions presented are

---

recovered from [the defendant] as damages"). With respect to injunctive relief as to removal of the trustees, Faircloth and Sexton have been already removed as trustees.

[8] Id. at 104.

[9] Sexton and Faircloth also filed additional motions — to intervene and for sanctions — on which the superior court stated, "the [c]ourt is punting." They now argue that they should have been allowed to intervene as a party to the modification petition, but in light of the trial court's correct ruling on the merits of their challenge to the modification and "punt" on the other issues raised, we need not address the additional arguments.

legal issues, which we review de novo.[10] Having done so, we discern no basis for reversal.

The Beneficiaries' petition to amend the Trust stems from the 2018 amendment to OCGA § 53-12-61. Prior to 2018, the Code section merely provided in its entirety: "The trust instrument may confer upon a trustee or other person a power to modify the trust."[11] Now, subsection (c) (1) of the amended Code section provides, in relevant part:

> Following the settlor's death the court shall approve a petition to: . . . Modify a noncharitable irrevocable trust if all the beneficiaries consent, the trustee has received notice of the proposed modification, and the court concludes that modification is not inconsistent with any material purpose of such trust. . . .

Pursuant to this language, the Beneficiaries petitioned the superior court in 2018 to amend the Trust, thereby allowing them to remove Faircloth and Sexton and appoint a corporate trustee. Following notice to the trustees and consent by all of the

---

[10] See *Hill v. First Atlanta Bank*, 323 Ga. App. 731, 732 (747 SE2d 892) (2013).

[11] OCGA § 53-12-61 (2017). Modification was more thoroughly addressed by former OCGA § 53-12-62, which was amended and now addresses invading the principal of a trust for purposes of trust decanting. See Ga. L. 2018, p. 267, § 8; Mary F. Radford, Georgia Trusts and Trustees, § 3:4, fn. 4 (2019-2020 edition).

Beneficiaries, the superior court entered an order granting the petition. Faircloth and Sexton moved to vacate that order, and in a well-reasoned and thorough order, the superior court denied their motion, giving rise to this appeal.[12]

As noted in the order denying the motion to vacate, the statutory language states that a court "shall" approve a petition if certain conditions are met. The record shows that the beneficiaries consented, and the trustees received notice. Accordingly, the controlling issue is whether the modification was inconsistent with any material purpose of the Trust.

The Trust by its terms was established in large part to pay income and principal "for the benefit of [] one or more or all of the . . . then[-]living descendants of . . . [Sherwin] . . . in such amounts and at such times as the Independent Trustees, in their discretion, may determine to be necessary and appropriate [for] . . . medical and educational expenses [and] . . . reasonable maintenance and support. . . ." There also is a charitable component in favor of Jewish charities and observant Jewish descendants, and based on the language of the trust, this combined purpose renders

---

[12] The original petition was addressed by Judge Gail S. Tuson; Chief Judge Robert McBurney inherited the case upon her retirement and authored the order denying the trustees' motion to vacate.

9

it a "mixed trust" with both charitable and non-charitable purposes.[13] Nothing about the proposed modification changed the process or eligibility for distributions established in the original Trust; the purpose of the Trust remained the same — providing financial support to Sherwin's descendants and Jewish charities, "*not*,"[14] as noted by the superior court, "to provide for the wellbeing of the independent trustees."

Faircloth and Sexton argue that allowing the Beneficiaries to change the trustees by modifying the Trust conflicts with OCGA § 53-12-221 (a) ("the Removal Statute"), which provides: "A trustee may be removed: (1) In accordance with the provisions of the trust; or (2) Upon petition to the court by any interested person showing good cause." They argue that this more specific language should control removal of trustees, and construing OCGA § 53-12-61 to allow removal by modifying the trust's removal provisions renders OCGA § 53-12-221 meaningless.

But this overlooks the fact that the two Code sections operate in different ways. First, the Modification Statute operates, as here, only after the settlor's death (whereas the Removal Statute contains no such restriction), when concerns could

---

[13] See, e.g., *Green v. Austin*, 222 Ga. 409, 413-414 (2) (150 SE2d 346) (1966).

[14] (Emphasis in original.)

10

arise that the settlor did not anticipate and can do nothing to resolve. Second, the Removal Statute, which operates at any time, allows initiation by "any interested person" and does not require consent of any of the beneficiaries. Thus, these two provisions address different scenarios and are not inherently inconsistent, and there is no ambiguity or practical effect that frustrates the purpose of either provision.

> The cardinal rule of statutory construction requires this Court to look diligently for the intention of the General Assembly (OCGA § 1-3-1), and the golden rule of statutory construction requires us to follow the literal language of the statute unless it produces contradiction, absurdity, or such an inconvenience as to [e]nsure that the legislature meant something else. Absent clear evidence that a contrary meaning was intended by the legislature, we assign words in a statute their ordinary, logical, and common meanings.[15]

Further, "[a]ll statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it. . . [W]hen a statute is amended, from the addition of words it may be presumed that the legislature intended some change in the existing law."[16] In light of this, when the legislature

---

[15] (Punctuation omitted.) *Turner v. Ga. River Network*, 297 Ga. 306, 308 (773 SE2d 706) (2015).

[16] (Citations and punctuation omitted.) *Nuci Phillips Mem. v. Athens-Clarke County Bd. of Tax Assessors*, 288 Ga. 380, 383 (1) (703 SE2d 648) (2010).

amended the Modification Statute in 2018 to allow trust modification after the death of the settlor (under the conditions enumerated in the statute), the legislature could have limited that authority with respect to removal of trustees. It did not.[17] The Modification Statute instead contains broad authority to modify trusts after the death of the settlor so long as the court determines that the notice provisions are met, all beneficiaries consent, and the purpose of the trust is preserved. This is not an absurd or impracticable result, and it is not inconsistent with the ability to remove a trustee (without the consent of the beneficiaries) at any time due to misconduct or for other good cause. The Modification Statute, unlike the Removal Statute, does not contain a burden to show good cause and encompasses scenarios that do not involve trustee misconduct.[18] In light of the plain statutory language requiring the court to approve

---

[17] The 2018 amendment to the Modification Statute was part of a raft of trust Code changes adopted in the same bill. See Ga. L. 2018, p. 262. Notably, the Removal Statute does not say a "trustee may *only* be removed" for good cause. Compare with OCGA § 53-12-501 (b) (2) ("This article shall not apply to . . . [a] power to appoint or remove a trustee or trust director."). To the contrary, the legislature did not change the language in OCGA § 53-12-221 that affords the authority to remove a trustee in accordance with the terms of the trust, even as it granted authority to modify trust terms under OCGA § 53-12-61.

[18] See generally *Chase v. State*, 285 Ga. 693, 698 (2) (681 SE2d 116) (2009) (explaining that courts may not usurp the General Assembly's legislative role and legislate by judicial fiat by engrafting language from one Code subsection onto another).

12

a modification under the terms in the Modification Statute, we will not read into the

Code a limitation that is absent.[19]

All motions pending in this Court are denied.

*Judgments affirmed. Coomer and Markle, JJ., concur.*

---

[19] See *SecureAlert, Inc. v. Boggs*, 345 Ga. App. 812, 821 (815 SE2d 156) (2018) ("We must assume that the General Assembly weighed the costs and the benefits before enacting the statute.").