**THIRD DIVISION**
**DOYLE, P. J.,**
**GOBEIL, J., and SENIOR JUDGE FULLER**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 11, 2024**

# In the Court of Appeals of Georgia

A23A1402. GLASS et al. v. FAIRCLOTH et al.

DOYLE, Presiding Judge.

This is the third appearance[1] of a case brought by certain beneficiaries[2] ("the Beneficiaries") of The Glass Dynasty Trust ("the Trust") alleging breach of fiduciary duties by former trustees Phillip Faircloth and Ted Sexton ("the Former Trustees"). The merits of the case have not been reached by any court. Instead, for the last six years the parties have litigated whether and when the trustees' attorneys will be paid out of funds held in the Trust during the pendency of the litigation.

---

[1] See *Glass v. Faircloth*, 354 Ga. App. 326 (840 SE2d 724) (2020) ("*Glass I*"); *Glass v. Faircloth*, 363 Ga. App. 232 (871 SE2d 69) (2022) ("*Glass II*").

[2] The beneficiaries include Ashley, Joshua, Gregory, and Samuel Glass.

The legal issue before us is a relatively narrow one: the Beneficiaries argue that the trial court erred by granting the Former Trustees' request for an interlocutory injunction requiring the current trustees to pay from the corpus of the Trust the attorney fees and costs of litigation incurred by the Former Trustees. Trial courts must be cautious when granting interlocutory injunctions,[3] and based on the applicable legal standard and the undisputed record, we conclude that the trial court erred by ruling that the Former Trustees met it. Accordingly, we reverse that ruling. The Beneficiaries also argue that the trial court erred by denying their request that the Trust be reimbursed approximately $4.6 million in fees already paid pursuant to an earlier order vacated by this Court in *Glass II*. We affirm that portion of the order.

The factual and procedural background has been recounted in our earlier cases,[4] but pertinent to the present dispute, we have summarized the history as set forth in *Glass II*:

---

[3] See generally *Yakob v. Kidist Mariam Ethiopian Orthodox Tewahedo Church, Inc.*, 359 Ga. App. 13, 21 (3) (856 SE2d 722) (2021) ("[A]n interlocutory injunction is an extraordinary remedy, and the power to grant it must be prudently and cautiously exercised."). See also *State Farm Mut. Auto. Ins. Co. v. Mabry*, 274 Ga. 498, 510 (5) (556 SE2d 114) (2001).

[4] See *Glass II*, 363 Ga. App. at 232.

In December 2017, after [ongoing] disputes over trustee fees and disbursements, the Beneficiaries sued Faircloth and Sexton. The Beneficiaries' verified complaint sought removal of Faircloth and Sexton as trustees, damages for breach of fiduciary duty, disgorgement of trustee fees, attorney fees, appointment of a receiver, an accounting, declaratory and injunctive relief, and punitive damages. According to the complaint, as of 2017, the Trust held approximately $43 million in assets, and the trustees had paid themselves at least $2,972,500 in total compensation from 2008 to 2017.

In January 2018, the Beneficiaries filed a verified motion for an interlocutory injunction in that case, seeking immediate removal of Sexton and Faircloth as trustees and to prevent them from paying any trustee fees or attorney fees. That same day, the defendants moved to dismiss the complaint, and in October 2018, the trial court issued a summary order denying the motion to dismiss. In January 2019, the trial court entered an order denying the motion for an injunction (the "January 2019 Order"). The order also provided for the appointment of a Special Master to determine the reasonableness of the attorney fees.

In April 2019, the Beneficiaries filed a separate petition in the Superior Court of Fulton County, seeking to modify the Trust pursuant to OCGA § 53-12-61 (c). The same month, the superior court entered an order finding that the conditions of OCGA § 53-12-61 (c) had been met and amending the order to allow removal of any trustee by a majority of the most senior generation of Sherwin[ Glass]'s descendant

beneficiaries. Sexton and Faircloth moved to vacate the order, and following a hearing, the superior court denied the motion.

In *Glass I*, the Beneficiaries appealed the January 2019 Order denying the motion for an interlocutory order to enjoin the payment of Faircloth and Sexton's attorney fees and the order granting the modification of the Trust. We affirmed the January 2019 Order, finding that the beneficiaries had not shown that they would suffer irreparable harm without an interlocutory injunction, as money damages would provide an adequate remedy at law. On appeal as a companion case, we also affirmed the trial court's order granting the Trust modification.

The Beneficiaries subsequently removed Faircloth and Sexton as trustees and replaced them with an institutional successor trustee. The trial court entered an order adopting the Special Master's order in its entirety and directing payment of the amount of outstanding attorney fees as determined by the Special Master out of the Trust. Faircloth and Sexton later filed a "Motion to Enforce the Court's January 22, 2019 Order Requiring Interim Advancement of Their] Attorneys' Fees," requesting enforcement of the January 2019 Order which, they maintained, entitled them to the continuing payment of such fees throughout the pendency of the litigation in accordance with the terms of the Trust, the signed releases, and the indemnity agreement. Faircloth and Sexton noted in their motion that the trial court's assistance was needed in securing the ongoing payment of fees, as they were no longer trustees and did not have access to the Trust funds. The trial court

entered an order granting the motion and directing the Trust to advance 50 percent of the fees incurred by one of Faircloth and Sexton's law firms, with the remaining 50 percent "subject to indemnification at the conclusion of this action"; and 100 percent of the fees incurred by a second law firm (the "Enforcement Order"). The Enforcement Order provided that "[s]uch fees shall be advanced by the [Trust] within 20 days of [Faircloth and Sexton's] requests during the pendency of this litigation without being reviewed for a determination of reasonableness," as long as counsel certifies that their fees are reasonable.[5]

The Beneficiaries appealed the Enforcement Order in *Glass II*, and this Court held that the trial court failed to engage in the proper analysis for granting what was essentially an interlocutory injunction requiring the prospective payment of attorney fees by the Trust before a final judgment had been reached on that question.[6] Accordingly, this Court vacated the Enforcement Order and remanded the case for consideration under the interlocutory injunction standard.[7]

On remand, the trial court applied the standard and held that Sexton and Faircloth "would, in fact, suffer irreparable injury if an injunction is not granted

---

[5] *Glass II*, 363 Ga. App. at 233-235.

[6] See id. at 237 (2).

[7] See id. at 237-238 (2).

5

because, the [c]ourt concludes, [Sexton and Faircloth] would not be able to afford the caliber of counsel necessary to defend this action." It also expressly held that there is a substantial likelihood that Sexton and Faircloth will prevail on the merits of the Beneficiaries' claims against them.

The Beneficiaries now appeal, contending that the court erred by (1) improperly applying the interlocutory injunction standard, and (2) denying their motion for the return of money already paid under an order later vacated by this Court in *Glass II*.

1. *Interlocutory injunction standard.*

The purpose of an interlocutory injunction is to maintain the status quo pending a final adjudication on the merits of the case. The trial court has broad discretion to decide whether to issue an interlocutory injunction. In doing so, the trial court should consider whether: (1) there is a substantial threat that the moving party will suffer irreparable injury if the injunction is not granted; (2) the threatened injury to the moving party outweighs the threatened harm that the injunction may do to the party being enjoined; (3) there is a substantial likelihood that the moving party will prevail on the merits of her claims at trial; and (4) granting the interlocutory injunction will not disserve the public interest. We will not reverse the trial court's decision on appeal unless the trial court made an error of law that contributed to the decision, there was no evidence on an element essential to relief, or the court manifestly abused its discretion. But where there is no meaningful

6

conflict in the evidence, the judge's discretion in granting or denying the interlocutory injunction becomes circumscribed by the applicable rules of law. A trial court's discretion to decide whether to grant an interlocutory injunction is abused, and may be reversed, when it is based on a misunderstanding or misapplication of the governing law, or where the law does not support recovery based on the evidence presented to the court.[8]

The decision to grant an interlocutory injunction involves a balancing of the above factors, and the first one — irreparable injury — "is the most important one."[9]

(a) *Substantial threat of irreparable injury.* The trial court justified its finding of irreparable injury by stating that unless the Trust paid Former Trustees' legal fees, they "would not be able to afford the caliber of counsel necessary to defend this action." But it is undisputed that pursuant to a back-up agreement with Farmers Home Furniture (where the Former Trustees have served as officers), Farmers has been loaning money to the Former Trustees to cover their legal fees in connection

---

[8] (Citations and punctuation omitted.) *Pulte Home Co., LLC v. Juanita M. Aycock Living Trust*, 360 Ga. App. 225, 227-228 (2) (860 SE2d 820) (2021).

[9] (Citations and punctuation omitted.) *City of Waycross v. Pierce County Bd. of Commrs.*, 300 Ga. 109, 111 (1) (793 SE2d 389) (2016).

with the Trust litigation. This is a fact on which the parties agree,[10] even if they disagree about its import. Thus, although Farmers is charging interest on this loan, that does not amount to an irreparable injury should it turn out that the Trust needs to reimburse the Former Trustees and/or Farmers for the attorney fees paid. Thus, contrary to the trial court's ruling, the stakes are not that the Former Trustees go unrepresented; rather, the stakes are simply whether the Trust will be obligated to repay interest accrued during the time it did not pay. This is not the type of harm deemed irreparable in these scenarios: "[e]quity will not take cognizance of a plain legal right where an adequate and complete remedy is provided by law."[11] Thus, any payments later deemed unwarranted can be recouped through an award of damages as authorized by law.

Further, we take issue with the trial court's presumption that the Former Trustees' interests can only be served by hiring the highest caliber legal counsel that money can buy. We agree with the trial court's observation that the billing in this case

_____

[10] The Former Trustees' appellate brief states, "Farmers is loaning money and charging interest to [the Former Trustees] to facilitate payment of defense costs, lest [the Former Trustees] go without counsel."

[11] (Citations omitted.) *Veterans Parkway Developers, LLC v. RMW Dev. Fund II, LLC*, 300 Ga. 99, 102 (793 SE2d 398) (2016).

so far is "stunning." But nothing suggests it must be so for the Former Trustees to have their day in court and even win. While the record is voluminous, the case boils down to issues of contract interpretation and motions practice that, even if complex, do not fall within an esoteric area of law that is highly specialized or technical such that only a handful of attorneys in Georgia can effectively engage in this practice.

In sum, the record lacks evidence to support a finding that the interlocutory injunction is necessary to prevent an irreparable harm having no adequate legal remedy.

(b) *Weight of threatened harm.* Given that the Former Trustees bear no risk of going without legal counsel, the weight of their harm is dramatically diminished, contrary to the trial court's ruling. Thus, it cannot be said that the potential harm to them outweighs the harm to the Trust if it is unnecessarily depleted by fees it did not need to pay.

(c) *Likelihood of prevailing on the merits.* The underlying action "sought removal of Faircloth and Sexton as trustees, damages for breach of fiduciary duty, disgorgement of trustee fees, attorney fees, appointment of a receiver, an accounting,

9

declaratory and injunctive relief, and punitive damages."[12] Faircloth and Sexton have already been removed by another method, but the trial court's order does not provide any substantive analysis of these issues, nor of the subsidiary issue of the enforceability of the 2013 agreement relied upon by the Former Trustees in seeking payment of their fees by the Trust. Given the interwoven and unresolved nature of these issues, it is not clear at this point that the Beneficiaries will suffer no success in their claims whatsoever. Nor is there clarity about the viability of the 2013 agreement at this time.

(d) *Public interest.* The trial court held that there is no real public interest implicated in whether the Trust pays the legal fees of the Former Trustees. We discern no error in this holding. We note that the front-end enforceability of duties to defend could be an important question as far as such contracts go, but given the record in this case (including the Farmers back-up agreement), that potential issue does not implicate a public interest here.[13]

---

[12] *Glass II*, 363 Ga. App. at 233, quoting *Glass I*, 354 Ga. App. at 327-328.

[13] See, e.g., *In re WorldCom, Inc. Sec. Litigation*, 354 FSupp.2d 455, 469 (B) (S. D. N. Y. 2005) (explaining the public interest implicated by director and officer ("D & O") insurance: "D & O insurance is not only designed to provide financial security for the individual insureds, but [it] also plays an important role in corporate governance in America. Unless directors can rely on the protections given by D & O policies, good and competent men and women will be reluctant to serve on corporate

In sum, the trial court erred by holding that Faircloth and Sexton would be irreparably harmed without an adequate legal remedy.[14] Due to the loan by Farmers, they have not been harmed by going unrepresented, and any monetary harm can be remedied by repayment of interest paid pursuant to the loan. As Justice Bleckley observed regarding equitable power, an interlocutory injunction "is a part of equity police. It is a device to keep the parties in order, and prevent one from hurting the other whilst their respective rights are under adjudication. There is often a cry for the police when there is no real danger."[15]

---

boards. . . [A] primary purpose of Delaware indemnification provisions is 'to encourage capable [people] to serve as corporate directors, secure in the knowledge that expenses incurred by them in upholding their honesty and integrity as directors will be borne by the corporation they serve.'") (citation omitted).

[14] Cf. *Daileader v. Certain Underwriters at Lloyd's London*, __ FSupp.3d __, 2023 U.S. Dist. LEXIS 69413, at *41 (S.D.N.Y., Apr. 20, 2023) ("[W]here an insured seeks an injunction requiring an insurance company to defend the insured, the policy holder must make a specific showing of harm that will result from not receiving the defense coverage, and demonstrate that this harm cannot be remedied later through an award of compensatory damages."), affirmed by *Daileader v. Certain Underwriters at Lloyds London Syndicate 1861*, No. 23-690-cv, 2023 U.S. App. LEXIS 30374 (2d Cir., Nov. 15, 2023) (unpublished).

[15] *Kirtland v. Mayor & Council of Macon*, 62 Ga. 747, 750 (1879).

2. *Repayment of fees already paid.* The Beneficiaries also argue that the trial court erred by denying their request for an order requiring the Former Trustees to return money that was paid by the Trust between the time that the Enforcement Order was in effect and the time this Court entered *Glass II*, vacating the Enforcement Order and remanding for consideration of the interlocutory judgment standard. The amount of fees paid during that time is $4,676,779.49 ("Interim Fees").

Our case law is clear that equitable powers are to be exercised by weighing the factors discussed in Division 1.[16] In light of the unique procedural posture of this case, and the prior payment of fees under an order in effect at that time, it was not an abuse of discretion by the trial court to preserve the status quo at the time of the Enforcement Order, at least with respect to the Interim Fees. Therefore, we affirm the portion of the order denying the Beneficiaries' request to return the Interim Fees already paid to the Former Trustees' attorneys.

*Judgment affirmed in part and reversed in part. Gobeil, J., and Senior Judge C. Andrew Fuller concur.*

---

[16] See, e.g., *City of Waycross,* 300 Ga. at 111 (1) ("[T]he trial court must make a judgment call regarding the equities presented, and the court is vested with broad discretion in making that decision. . . .[T]he test for the issuance of an interlocutory injunction is a balancing test[.]").